## APPEAL OF HARMAN & HASSERT.

[DELAWARE ETC. R. CO. v. AMITY COAL CO., LIMITED.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 27, 1889—Decided March 18, 1889.

(a) In the distribution of the proceeds of a sheriff's sale of the plant of a coal company, a mechanics' lien creditor claimed for mine cars, etc., furnished under a contract for their delivery from time to time as they might be needed in the operation of the works.

(b) Upon sufficient evidence, the auditor found as a fact that the mine structures were completed and operations begun in September, 1884, and as a matter of law that, the lien not being filed till in June, 1885, the claimant could not participate, although a portion of the cars were furnished within six months prior to the date of filing his claim.

1. The findings of fact by the auditor having been approved by the court below, and appearing to be in accordance with the weight of the evidence, upon the controlling subject as to the time of the completion of the breaker buildings against which the lien was filed, the finding would not be disturbed by this court.

2. There was nothing in the terms of the claimant's contract, by which the cars were to be furnished from time to time as they might be needed by the company, that could have the effect of extending the time of filing the lien beyond six months from the completion of the breaker.

3. Nor did the fact that, after the completion of the breaker, the coal company found it necessary to make and did make certain alterations and additions to the structure of the breaker, have the effect of so extending the time of filing the lien.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 179 January Term 1889, Sup. Ct.; court below, levari facias No. 29 October Term 1885, C. P.

### Auditor's Report.

On October 8, 1885, the proceeds of the sale of the property of the Amity Coal Co., Limited, at the suit of the Delaware, Lackawanna & Western Railroad Company, being paid into court, *Mr. J. H. Torrey* was appointed auditor to report a distribution thereof to and among the creditors entitled.

At the hearing before the auditor a contention arose between William L. Watson, trustee for bondholders under a mortgage of the coal company dated December 26, 1884, subsequent to that upon which the property was sold, on the one hand, and, on the other, two mechanics' lien creditors, to wit: A. Ryman & Sons, claiming $3,985.68, sur lien filed June 9, 1885, and Harman & Hassert, claiming $3,339.83, sur lien filed June 15, 1885. The facts are shown in Mr. Torrey's report as auditor, filed on December 7, 1887, which, so far as material to the present case, and that of Ryman's Appeal, immediately following, was as follows:

### A. RYMAN & SONS' CLAIM.

The contention between this and the two following liens on the one hand and the trustee of the second mortgage on the other, constitutes the only serious issue in this case.

The facts out of which the contention arises will now be stated:

The Amity Coal Company, Limited, was organized under the provisions of the act of June 2, 1874, by articles recorded June 20, 1883. They at once leased certain coal lands in Lackawanna township and commenced to sink a shaft and build a breaker. A contract was made with A. B. Tyrrell for the erection of the breaker, according to plans prepared in the office of the Pittston Engine and Machine Co. Under his contract Tyrrell was to build the breaker for thirteen dollars per thousand feet of all lumber which should be used, the company furnishing all materials. Arrangements were made by S. N. Stetler, the chairman, and E. L. Fuller, the secretary and treasurer of the Amity Coal Company with the firm of A. Ryman & Sons, lumber dealers of Wilkes-Barre, to furnish the lumber required for the breaker, as it should be needed, at the rate of fourteen dollars per thousand feet for hemlock, delivered upon the ground. The orders for the lumber were some-

times received from officers of the company and sometimes from Mr. Tyrrell. The first lumber was shipped August 7, 1883, and the shipments continued from time to time until December 12, 1884. The aggregate amount of the lumber bills of Ryman & Sons was $21,543.57, which includes some items of discount, etc., which are not proper subjects of lien. They acknowledge to have been paid $17,582.89, leaving their claim $3,960.68. All of the lumber which went into the breaker building was furnished on the credit of the building.

\*       \*       \*       \*       \*       \*       \*       \*

That which was recognized as the most critical question in regard to this lien and to which the great bulk of the testimony was directed, remains to be considered, viz.: Was it filed in time?

The claim was filed June 9, 1885. Only two items of the bill of particulars were furnished within six months before that date, to-wit: December 12, 1884, 10,400 ft., 1 in. x 12 in., 16 ft. hemlock, $145.60, and the following item amounting to $195.81, charged under date of June 6, 1885, and covering a large number of pieces of hemlock timbers.

From the testimony of Tyrrell, Lutz and Fuller, it appears that the last item is made up of timbers which were furnished from time to time up to December, 1884, were condemned, replaced by A. Ryman & Sons, and were finally used by the company in the progress of the work, mainly in the construction of the dirt plane and extensions of the culm dump, part of it being used as late as February or March, 1885. So far as it was used by Tyrrell before he left, it is improperly charged as of a date in 1885, as Tyrrell left in November, 1884. So far as it was used in the subsequent constructions testified to by Lutz and Fuller, its value for the purpose of extending the time for filing the lien depends upon the question whether those constructions were or were not essential to the completion of the breaker, which question will be hereafter considered.

The item of December 12, 1884, was a car load of hemlock boards which were used in boarding up an archway between the shaft tower and the breaker building. This item was furnished and used within six months before the lien was filed, and is sufficient to carry back the lien of the whole account to the date of the commencement of the breaker building, if that

boarding up of the archway was a part of the original construction of the breaker, as claimed by the lien creditors. If, however, as is claimed by opposing creditors, that work was in the nature of an addition, alteration or repair to the building, the lien was filed too late.

The Amity breaker was commenced about June, 1883. It was so far completed about September 20, 1884, that work was begun in it at that time and prosecuted without interruption thereafter. Mr. Tyrrell, the contractor, at that time removed his poles, ropes and scaffolding, but continued to do some work, by day's work, until November 21, 1884, when he finally left. No further work of an original character was done from that time till about December 20th.

By instruction of the owners the space, about thirty feet wide, between the shaft tower and the breaker building, was left uninclosed for a distance of about eighteen feet from the ground. The shaft tower itself was also left uninclosed for about the same height on the breaker side. This was done deliberately, and was at the time intended to be permanent, the said space being unused except as a means of access to the shaft and a passageway under the breaker.

A great deal of water percolated through the soil and rocks into the shaft, but occasioned no serious difficulty during warm weather. The ventilation of the mine was supplied by a downcast of air into the shaft. When the severe cold of winter began to be felt, a great deal of trouble was experienced from the freezing of water in the guides of the shaft carriage during the night, thereby causing it to bind and stick to such an extent as to interfere with the hoisting of coal. The first expedient resorted to for obviating this difficulty, was to line the shaft with timbers so placed that the water would run down between the walls and the lining. This proved to be insufficient. A fire in a stove or grate was then placed upon the carriage, which was lowered part way down the shaft during the night. The evil being still unabated, the shaft on the breaker side and the open archway spoken of were boarded down to the ground and two stoves placed inside near the opening of the shaft.

The expert testimony developes a diversity of opinion as to whether the boarding up of this archway constituted a neces-

sary part of the breaker structure, or whether it was in the nature of an addition, alteration or improvement.

The admission that the projection of the down-cast into the shaft is a necessary part of the original construction of the breaker, would not, of itself, involve the admission that this particular device was so necessary. Nearly all the witnesses testify that many devices are resorted to for this purpose, and that it is very difficult to entirely avoid trouble from the freezing of water in a shaft with a down-cast of air and a large amount of water. E. J. Evans says that the evil is not yet entirely removed at the Amity mine, and Mr. Storrs says that it is sometimes necessary to change the plan of ventilation so as to make an up-cast in the hoisting shaft.

When the question is, as in this case, whether two portions of a structure which have been successively erected, with an intervening period of time, are but parts of one building, or whether the second is an addition to or alteration of the first, the crucial test adopted by the courts is the original design or intention of the parties. The length of the intervening period is of little, if any, importance. That the erection of some portion of the building, as originally designed, is delayed for a considerable period after the rest of the building is completed and put in use, makes it no less an essential part of the building. That something not originally designed as part of the building is found to be necessary and is supplied almost immediately after the building, as planned, is completed, makes it no less an addition. The opinion of expert witnesses as to the necessity for certain appliances is not a safe guide in the determination of the question whether a building is completed. Were it accepted as a guide, new and rapidly growing industries, such as electrical plants, could never be considered completed. Every new discovery in the art leads to the adoption of new and improved appliances, which, when adopted, are rightly regarded as necessary and essential to the structure. And even in old and familiar industries, unexpected and unanticipated exigencies are constantly arising, which require new and improved methods, which, when adopted, seem to be and actually are as necessary as any of those which were originally planned. An unskillful designer may plan a building which would seem to an expert an abortion, to adopt the phrase

of one of the witnesses, yet, when finished according to the plan, it is as much a completed building as if it were perfect in all its appointments. And if, after a few weeks or months of unsuccessful experiment the requisite changes are made, they are not the less alterations or repairs, because they ought to have been anticipated and included in the original design : Thoma & Blandy's Estate, 76 Pa. 30.

These principles are so patent that several of the witnesses in this case answer questions whether or not the Amity breaker was completed before certain appliances were provided, in the Yankee fashion, by asking whether those appliances were contemplated in the original plan.

The cases are full of illustrations of the application of this test. In Diller v. Burger, 68 Pa. 432, Burger began building a brewery in March, 1866, and finished it in March, 1867. It was found after it was put in operation that the hot water ran down into the cellar and increased the temperature to such a degree as to sour the beer there stored, in consequence of which he was obliged to, and did in 1868, erect another connecting building. Diller furnished the machinery for both buildings and filed a lien therefor. In a contention between Diller and a creditor, whose judgment was entered after the commencement and before the completion of the first building, the issue was determined against the lien. In its answer to the plaintiff's second point the court below said: "If the jury should consider the two buildings as constituting one, and both buildings were originally designed and intended to be one building when the first building was erected, then we answer this point in the affirmative. But if the second building was erected after the first building was erected, and was a building not designed to be erected when the first building was erected, and the lien was not filed within six months from the completion of the first building, then we answer this point in the negative." And in the general charge, "If . . . . . when the first building was erected, it was designed and intended that the additional building was to be part of it . . . . . then the plaintiff was in time in filing his claim." These portions of the charge were assigned as error and affirmed by the Supreme Court in an opinion in which the case is made to turn on the fact that "the addition was a new building, the result of a new plan, and a new undertaking."

Hofer's Appeal, 116 Pa. 360, presents the converse aspect of the same principles. There the latter construction was held to be a part of the building, though months had elapsed since the completion of the remainder, because it was a part of the original plan and intention of the builder. See also on the same point: Norris's App., 30 Pa. 122; Parrish's App., 83 Pa. 111; Yearsley v. Flanigen, 22 Pa. 489; Holden v. Winslow, 18 Pa. 162.

The application of this test to the case in hand seems to the auditor fatal to the mechanic's claim.

\*       \*       \*       \*       \*       \*       \*       \*

The auditor therefore finds as a fact that at the time the breaker was built it was not the intention to board up this archway; but it was the intention to leave it permanently open. And he finds as matter of fact that the breaker was completed more than six months before the lien in this case was filed.

Some time in February or March, 1885, a chute was put in the breaker to convey buckwheat coal from the screens to the fire room of the boiler house, and about the same time an extension of the trestling of the dirt plane was made. It can hardly be contended that either of these erections constituted a part of the breaker as originally designed. Counsel for A. Ryman & Sons in their brief of argument state that, according to their theory of the case, the breaker was completed about December 20, 1884.

The auditor finds as matter of fact that the chute for buckwheat coal was a mere repair of or substitute for a chute of the same kind and designed for the same purpose in the original erection, but which use had demonstrated to be inadequate. The extension of the trestling was also an addition or repair in no respect an essential part of the original breaker structure, if, indeed, it were a part of it at all. The auditor finds as matter of law that the lien of Ryman & Sons was filed too late to constitute a lien from the date of the commencement of the building.

## HARMAN & HASSERT'S CLAIM.

Harman & Hassert filed their claim June 15, 1885. It was for mine cars and iron work used in and about the breaker and the mine. The items were delivered from time to time from April 21, 1884, till March 9, 1885. The mine cars were

ordered by Mr. Stetler with the understanding that they should be delivered from time to time as they were needed. It was estimated that there would be required from 150 to 200: 116 were delivered; 60 of them, or more than one half, were delivered after work began in September, 1884. As the mine extended, more cars were required, and, if the Amity company had continued to operate this mine, it seems probable that additional cars would have been needed and furnished under the same contract as the work extended, perhaps up to the present time.

It has been decided that mine cars are fixtures under the act of 1858, and it was proper to file a claim for them; but it can hardly be contended that the time of the completion of the breaker is to be postponed until all mine cars that may ultimately be needed shall have been supplied. The rails which are laid in the mines are also fixtures; but, until the mines are entirely worked out, new rails are constantly needed in the extension of the workings. It would seem preposterous to claim that the time of the completion of the works for the purposes of the lien law was to be fixed by the date of the last shipment of rails.

The auditor finds that the claim of Harman & Hassert was filed too late, the breaker having been completed more than six months before it was filed.

*       *       *       *       *       *       *       *

As required by court rule VI., § 4, the auditor served upon the counsel notice of the conclusion of the hearing which is hereto attached. Within four days after the service of said notice, to wit, on October 18, 1887, there was presented to the auditor the written request of A. Ryman & Sons for an issue under the 87th section of the act of June 16, 1836, together with the affidavit of T. F. Ryman particularly stating the facts which they dispute. The said request and affidavit are annexed to this report.

The auditor then reported a distribution excluding the mechanics' lien creditors from the fund and applying the balance after paying certain prior and undisputed claims to William L. Watson, trustee, etc. Attached to the report as filed was the request for an issue made on behalf of A. Ryman

& Sons, verified by affidavit and setting forth the material facts alleged to be in dispute and that the issues for which a trial by jury were demanded were as follows :

1. Whether the portion of the breaker finished in December, 1884, was a constituent part of the structure.

2. Whether the lumber received from A. Ryman & Sons in December, 1884, was used in said breaker.

3. Whether the payments received by A. Ryman & Sons have not been applied by them first upon or to the other buildings, not the subject of the lien, and the balance on account of lumber furnished for and used in the construction of the breaker.

4. Whether a balance is still due A. Ryman & Sons for lumber furnished by them under their contract with the Amity Coal Company, Limited, and if so, how much.

5. Whether the notes of defendants accepted by said A. Ryman & Sons, extinguished the lien or discharged the debt.

The report of the auditor with the accompanying testimony and exhibits being filed, Harman & Hassert filed various exceptions, inter alia :

1. The learned auditor erred in finding " that the claim of Harman & Hassert was filed too late, the breaker having been completed more than six months before it was filed."

A. Ryman & Sons also filed various exceptions to the findings of fact of the auditor, and inter alia :

9. In finding as matter of law that the lien of A. Ryman & Sons was filed too late to constitute a lien from the date of the commencement of the building.

Said exceptions having been argued, the court, CONNOLLY, J., on December 3, 1888, filed an opinion as follows :

This case comes before us upon exceptions to the report of the auditor to distribute the funds arising from the sheriff's sale of real estate of the defendant company. We have devoted a great deal of time in examining the case, and after a very careful consideration of all the points and questions involved, we cannot find where we materially disagree with the learned auditor, either in his findings of fact or of law. The admirable report of the learned auditor relieves us of a great deal of

labor in disposing of this case. The report has been prepared with a great deal of labor, and it is so clear and orderly that it relieves us from recounting either the facts or the law.

There remains one other question, however. Ryman & Sons and Dale & Co., before the report was filed, presented a written request to the auditor for an issue. The facts demanded to be tried before a jury in their demand for an issue are identically the same as those contended before the auditor. If this is a matter of discretion, and I am of the opinion that it is, then I deny the issue for the reason that these claimants have had their day in court before the auditor, where witness after witness was called and voluminous testimony taken pro and con. in reference to the very matter asked for by them to be tried before a jury in their demand for an issue. For this reason, I repeat, I refuse to grant an issue.

And now, to wit, December 3, 1888, the demand for an issue is refused, the exceptions filed on the part of Dale & Co., Ryman & Sons and Harman & Hassert, to the report of the auditor are dismissed, and the report of the auditor is confirmed finally.

Thereupon Harman & Hassert took this appeal, assigning as error the order of the court dismissing their several exceptions and confirming the report of the auditor.

*Mr. Lemuel Amerman* (with him *Mr. S. W. Edgar*), for the appellants.

*Mr. Alexander Farnham*, for the appellee.*

OPINION, Mr. JUSTICE STERRETT:

The fund, in the distribution of which appellants claimed the right to participate as lien creditors, was raised by sheriff's sale of the Amity Coal Company's property on a levari facias in favor of the Delaware, Lackawanna and Western Railroad Company. They claimed under a mechanics' lien filed June 15, 1885, against a building known as a " coal breaker," erected on the premises by the company defendant in the execution.

---

* The arguments of counsel on both sides were confined almost entirely to an elaborate discussion of the testimony.

The validity of the lien, and consequent right of appellants to participate in the fund, depended on whether their claim was filed within six months from the completion of the building. That, of course, was a question of fact to be determined by the evidence. The testimony was somewhat conflicting, but, upon a careful consideration of all the evidence, bearing on the subject, the learned auditor reached the conclusion that the claim was not filed in time, and he so found as a fact. That and other subordinate findings of fact were approved by the court, and, of course, the result was that appellants were not permitted to participate in the distribution.

The subject of complaint, in the first and controlling specification, is the finding by the auditor, and approval thereof by the court: " That the claim of Harman & Hassert was filed too late, the breaker having been completed more than six months before it was filed."

The six remaining specifications are each predicated of error in that finding of fact. Unless it is manifestly erroneous there is nothing in either of the assignments of error that will justify a reversal of the decree.

It has been most thoroughly settled by a long line of cases, which it is unnecessary to cite, that an auditor's findings of fact, approved by the court below, will not be disturbed on appeal to this court, except for manifest error. His report, upon the facts of the case submitted to him, is entitled to the same weight as the verdict of a jury, and will not be set aside except for reasons which would constrain a trial judge, in an action at law, to set aside a verdict and order a new trial.

While portions of the testimony relied on by appellants are sufficient to create some doubt as to the correctness of the finding complained of, a review of all the evidence, returned with the record, has failed to satisfy us that the finding on that controlling subject should have been in favor of the appellants. On the contrary it appears to be in accordance with the weight of the evidence.

There is nothing in the terms of appellants' contract with the Amity Coal Company, Limited, for furnishing mine cars, to be delivered from time to time as they might be needed by the company in the prosecution of its mining operations, etc., that could, by any possibility, have the effect of extending the

time for filing appellants' claim beyond six months from the completion of the breaker. Nor did the fact that the coal company, after the completion of the breaker, found it necessary to make some alterations in and additions to the building, have any such effect.

There appears to be nothing in the record that requires a reversal of the decree.

> Decree affirmed, and appeal dismissed at the costs of the appellants.