JOHN P. CAHOON and REYNOLDS CAHOON, Copartners, doing business as J. P. CAHOON & BROTHER, Appellants, v. THE FORTUNE MINING AND MILLING COMPANY, a Corporation, SIMON BAMBERGER, SIMON BAMBERGER, Trustee, MOSES MARKS, WILLIAM E. SMEDLEY, MARY A. SMEDLEY and THE CUNNINGTON COMPANY, a Corporation, Respondents.

No. 1416.     (72 Pac. 437.)

1. **Mechanic's Lien: Termination of Contract: Subsequent Delivery: Foreclosure of Lien.**

Plaintiffs contracted with defendant, a mining and milling company, to furnish material for the construction of its mill, and delivered materials almost daily till in July, when the mill was completed, with the exception of some alterations and the construction of some ore bins. The mill was put in operation at this time—all the mechanics engaged in its construction leaving, except one, who remained to make repairs and alterations—and it was kept in operation till in December, when it was closed. During all this time, changes, alterations, and repairs were made in the mill; and plaintiffs delivered more materials in September, and again in the following January. *Held*, that the materials delivered in January were not furnished pursuant to the original contract, so as to entitle plaintiffs to a mechanic's lien for the balance due on all the material furnished by filing their claim within sixty days after this last delivery.

2. **Same.**

Plaintiffs contracted with defendant, a mining and milling company, to furnish material for the construction of a mill. Several months after the practical completion of the mill, and after plaintiffs had ceased furnishing materials for its construc-

Cahoon & Bro. v. Fortune Min. & Mill. Co. et al.

tion, another and subsequent·contractor foreclosed a mechanic's lien against defendant, without any protest from plaintiffs, or notice of a claim for a prior lien, whereupon plaintiffs, one of whom was a stockholder in the defendant corporation, delivered additional materials, not contemplated in their original contract, and not needed or used for the mill, and, just before the expiration of the statutory sixty days after this last delivery, filed their claim for a mechanic's lien for the balance due on all the materials, including those furnished under the original contract. *Held*, that plaintiffs could not, by this last delivery, revive their right to a lien for the materials furnished under the original contract, and thus defeat the lien already foreclosed.

(Decided April 24, 1903.)

Appeal from the Third District Court, Salt Lake County.—*Hon. W. C. Hall*, Judge.

Action to foreclose a mechanic's lien. From a judgment in favor of the plaintiffs (granting insufficient relief), they appealed.

AFFIRMED.

*Messrs. C. F. & F. C. Loofbourow* for appellants.

A lien may be established for all the materials furnished under one single contract, although some of them may have been furnished for alterations, repairs, etc., after the mill was put in operation. German Bank v. Schloth, 59 Iowa 316; Helena Bank v. Wells, 40 Pac. 78; Lamb v. Haniman, 40 Iowa 41; Kearney v. Wordeman, 33 Mo. App. 447; Fulton Works v. Mining Co., 80 Mo. 265; Chase v. Coal Co., 90 Iowa 25; Henry & Coatesworth v. Fisherback, 37 Neb. 224; Salt Lake Litho. Co. v. Ibex Mining Co., 15 Utah 440; Field v. Daisy Gold Mining Co., 25 Utah 76, 69 Pac. 528; Boisot v. Liens, sec. 482 and 3; Phillips, M. Liens, sec. 525 and 6; 2 Jones on Liens, sec. 1436.

Our statute provides that "Materialmen furnish-

ing materials to be used in the construction, alteration, addition to or repair, etc.," shall be entitled to the lien created by the statute. It has never been held, so far as we know, under a statute like ours, that a materialman must show that the materials furnished by him were actually in the structure upon which he seeks to establish his lien, but only that they were furnished by him to be used for that purpose. If the owner, without the materialman's knowledge, diverts the material or any part of it to other uses, this will not affect the right to a lien. Beckel v. Peticrew, 6 Ohio St. 251; Eslinger v. Henper, 22 Wis. 602; Wilson v. Ry. Co., 51 Iowa 190; Mechanics etc., Co. v. Cooper, 32 Pac. 1073; Barnes v. Lewell, 48 Minn. 425; Central Trust Co. v. Ry. Co., 54 Fed. 603; Wats v. Whittensen, 48 Md. 357; Bank v. Rockaway Mf'g Co., 14 N. J. Eq. 189; Lindle Co. v. Refining Co., 23 Atl. Rep. 800; O. F. Hall etc. v. Messer, 24 Pa. St. 507; Hinchman v. Graham, 2 S. and R. 170; Sierre Nevada Lumber Co. v. Whitmore, 66 Pac. 781, 24 Utah 130.

*Messrs. Pierce, Critchlow & Barrette* for respondents.

The courts are in conflict upon the point as to whether the materials must actually be used in the building before a lien for their value can be included in a lien. Mr. Boisot, in his work on Mechanics Liens, sec. 119, cites numerous cases either way. In addition to those there cited holding that no lien for such material can be obtained, we cite: Hunter v. Blanchard, 18 Ill. 318; Fitch v. Howitt (Ore.), 52 Pac. 192; Hill v. Bowers (Kan.), 26 Pac. 13; Chapin v. Persse, 30 Conn. 472; McGarry v. Arvill (Kan.) 31 Pac. 1082; Taggard v. Buckmore, 42 Me. 77; Deardorff v. Everhartt, 74 Mo. 37; Schulenberg v. Institute, 65 Mo. 295; Heltzell v. Ry. Co., 20 Mo. App. 435.

It is stated by appellants that the rule is otherwise in this State, and they cite in support thereof Sierra Ne-

vada Lumber Co. v. Whitmore, 24 Utah 130. An examination of the case shows that the rule contended for was not adopted save with reference to the peculiar facts of that case. The court holds that since the subcontractor delivered the material to the owner, and since the contractor actually finished the houses according to his contract with the owner, the fact that the particular goods furnished were not used by the contractor but by him taken elsewhere, gave the owner no right to make any deduction. So long as the contract was filled by the original contractor, the latter had no ground to complain. This it will be seen is a very different case from the one at bar, and by no means bears out appellants' contention.

### STATEMENT OF FACTS.

Plaintiffs are partners engaged in selling lumber, coal, and building material at Murray, Utah. On November, 1899, at Salt Lake City, Utah, they entered into an oral agreement with the defendant, the Fortune Mining & Milling Company, a corporation, to furnish lumber and building material for the construction of an ore concentrating mill about to be erected by the defendant the said Fortune Mining & Milling Company in the West Mountain mining district, Utah—a distance of about eighteen miles from plaintiffs' lumber yards at Murray. No certain, specified amount of material was agreed upon, but the contract, in general terms, provided for sufficient amount to build the mill. The terms of payment agreed upon were that one of the plaintiffs should take 1,000 shares of the company's capital stock in payment of $400 on the price of the material, and that the remainder of the purchase price should be paid as the material was delivered. The plaintiffs, in pursuance of the contract then entered into, on December 4, 1899, commenced shipping lumber from their yards at Murray to the company's mill site, in West Mountain mining district, Utah, and continued thereafter to deliver

material almost daily until July 18, 1900, about which date the mill, with the exception of a few alterations to be made, and the construction of ore bins and tanks, was completed. No more material was ordered or delivered until September 13, 1900, when plaintiffs again made a small shipment amounting to $35. On January 29, 1901, more than four months after the September consignment, plaintiffs again delivered a small load, amounting to $27.45, no part of which was needed or used in or about the mill. The entire amount of material thus furnished came to $4,124.22. The company made payments which, including the $400 paid for in capital stock before mentioned, in the aggregate amounted to $3,400.89; the last one being a payment of $500, made October 10, 1900, leaving a balance of $723.33 due the plaintiffs. Before the last shipment was made, one of the plaintiffs called once or twice on Mr. Hill, the president and business manager of the company, to see about getting money on the balance due for material, but failed to get it. He also consulted their attorney about their account against the company. In December, 1900, the mill was shut down, the building closed up tight, and the foreman of the mine put in charge of it. On March 29, 1901, plaintiffs filed with the county recorder of Salt Lake county their notice of intention to claim and hold a mechanic's lien on the mill and premises in question for the sum of $723.33, balance due them for the material furnished as above stated. On October 22, 1901, plaintiffs commenced their action to foreclose their lien. The defendants Simon Bamberger, trustee, Moses Marks, William E. Smedley, and Mary A. Smedley, and Cunnington Company, a corporation, filed their respective answers, putting in issue all the material allegations of plaintiffs' complaint. Simon Bamberger pleaded title in himself to the mill and premises. Moses Marks, by cross-complaint, set up a note, secured by a mortgage covering the premises in question, executed to him by the defendant Fortune Mining & Milling Company. Cunnington Company

claimed a judgment lien on the premises, and William
E. and Mary A. Smedley also claimed a judgment lien
on the property.   At the trial the following statement
of facts was agreed upon by and between the parties to
the action:   "The defendant Cunningham & Co. ob-
tained a general judgment against the Fortune Mining
& Milling Company on February 12, 1901, for $960.80.
In that suit there was no effort to establish any lien.
It was suit on account, and a general judgment was ren-
dered, and the only lien that Cunnington & Co. have is
a general lien, which attached to their judgment.   De-
fendants William E. Smedley and Mary A. Smedley
obtained a judgment against the Fortune Mining & Mill-
ing Company June 26, 1900, on which a balance of
$623.90 and interest remains unpaid.   No lien was es-
tablished or claimed in that suit upon the premises now
in controversy, and the only lien which that judgment
constituted is the general lien which the law attaches
to a judgment.   The defendant Moses Marks has a
mortgage upon the premises in question, of date May 2,
1900, for $10,000, and interest.   The mortgage was re-
corded May 3, 1900, and is the one which is sought to
be foreclosed by the cross-complaint of the defendant
Moses Marks.   As to the claim of defendant Simon
Bamberger, the Salt Lake Hardware Company claimed
a mechanic's lien upon the premises in controversy for
goods furnished from August 1, 1900, to October 30,
1900, in the sum of $1,241.47.   That lien was filed De-
cember 21, 1900.   Judgment foreclosing it was entered
in favor of the Salt Lake Hardware Company, and
against the Fortune Mining & Milling Company, Jan-
uary 22, 1901.   Under that judgment, sale was made
July 17, 1901, and Mr. Bamberger was the purchaser,
and now has the sheriff's deed upon that sale, dated
January 20, 1902.   The amount of his bid was the full
amount of the judgment of the Salt Lake Hardware
Company, with costs.   The plaintiffs, J. P. Cahoon &
Bro., were not parties in any of these suits.   The first
case in which they have been parties, in any way affect-

ing this property, is the present suit to foreclose their mechanic's lien. Simon Bamberger holds the sheriff's deed of the mining claims known as the 'Fortune Group' of date January 20, 1902. The defendant Moses Marks offered in evidence his note of May 2, 1900, executed by the Fortune Mining & Milling Company, for $10,000, due six months after date, with interest at eight per cent, and reasonable attorney's fees, with no indorsement as to either principal or interest; also the mortgage given by the Fortune Mining & Milling Company to secure said note, recorded May 3, 1900.'' The court found that the material delivered by plaintiffs at the mill January 29, 1901, was not furnished in pursuance of the original contract made in November, 1899, but under a subsequent contract entered into between the plaintiffs and the defendant Fortune Mining & Milling Company, and that plaintiffs had failed to acquire any lien on the property in question, or any part thereof, as the time in which they had a right to claim a lien had expired long before their notice was filed. A decree was entered providing that plaintiffs recover from the Fortune Mining & Milling Company the balance due them for material, and ordered the property sold to satisfy the several claims and liens, in the order of their priority. Plaintiffs appeal.

McCARTY, J., after stating the facts, delivered the opinion of the court.

The controlling and decisive question involved in this case is, did the court err in holding that the last bill of lumber, amounting to $27.45, and shipped by plaintiffs on January 29, 1901, to defendant Fortune Mining & Milling Company, was not furnished under the same contract upon which the bulk of the material was delivered? It is contended by appellants that there was only one contract entered into by them and the Fortune Mining & Milling Company for the furnishing of material, and that such contract did not terminate until the last load was delivered, January 29, 1901;

VOL. 26, FEBRUARY TERM, 1903.        93

Cahoon & Bro. v. Fortune Min. & Mill. Co. et al.

"that it was practically a continuous transaction." Respondents contend that plaintiffs' contract to furnish material for the construction of the mill was completed July 18, 1900, which they claim was about the time the mill was finished.

Section 1386, Revised Statutes 1898, so far as material in this case, provides that "every original contractor, within sixty days after the completion of his contract, and every person save the original contractor claiming the benefit of this chapter, must, within forty days after furnishing the last material . . . file for record with the county recorder of the county in which the property, or some part thereof, is situated, a claim in writing containing a notice of intention to hold and claim a lien . . . with a statement of the terms, time given, and conditions of his contract specifying the time when . . . the first and last material was furnished . . ." The foregoing provisions of the statute are plain and free from ambiguity. It will be observed that a subcontractor has forty days from the time of the furnishing the last material in which to file a notice of intention to claim a lien, and an original contractor has sixty days from the time of the completion of his contract. It therefore becomes important to determine when the mill in question was completed, as the terms of the contract under consideration were that plaintiffs should furnish the lumber necessary to build the mill. When the mill was completed, plaintiffs' contract for furnishing material terminated, and they had sixty days thereafter in which to file their notice of intention to claim a lien for whatever balance was due them under the contract. While there is some apparent conflict in the testimony on this point, we think the great preponderance of the evidence shows that the mill was completed long before plaintiffs made their last two shipments of material. When the mill was put in operation, in July, 1900, the mechanics who constructed it and put the machinery in place all quit work and left, except one, who was retained to make repairs and such

changes and alterations as are usually necessary and in-
cident to the starting of new machinery. The mill
stopped running in December, 1900, at which time a few
repairs were made, the building closed and locked up,
and a watchman put in charge of it. Mr. Bamberger,
one of the respondents, testified that he was at the mill
in June or July, when the carpenters and builders were
there, and saw it again after they quit work and left,
and when the mill was in operation; that the building
was complete; and that there were no particular changes
made after the mill started, except to adjust the ma-
chinery. Mr. Hill, the president and business man-
ager of the mill and mine, and the party who made the
contract in question for the company, was sworn in be-
half of the plaintiffs, and testified, in part, as follows:
"The building of the mill progressed satisfactorily from
January 23d [1900] to the time it was completed and
went into operation, about the 15th of July [1900]. It
began turning out its products, subject to such delays as
a new mill might ordinarily have. The machinery was
pretty nearly all installed, and the mill was all inclosed.
The ore bins were made later—the bins for the concen-
trates. The ore bins at the mill were constructed in
June, July and August, and in fact never were finished
yet." This witness also stated in general terms that
the mill was not completed in July, and then proceeded
to explain in what respect it was incomplete, as follows:
"The boxes for carrying the ore through the mill were
put in with no grade to amount to much, and we had to
take them all out. Some changes were necessary to
be made all along from time to time after the mill
started. The ore would wear those boxes away, and
we had to renew them, and we had always to see where
we could change them and make them better. Alter-
ations were necessary to be made in and about the mill
after it started, and we made them from time to time
as it became necessary." And again he says: "Re-
pairs have been going on at the mill. It has been closed
up tight and a watchman there. There has been fixing

all the time, more or less—getting the tanks soaked up, cleaning up around the mill, and fixing different things around the bins; fixing up around the pumps covering up the pipes to keep them from freezing.'' It will readily be observed that the changes, alterations, and repairs spoken of by the witness had no connection with the building of the mill in the first instance, and the material furnished for such alterations and repairs did not come within the scope and terms of plaintiffs' original contract for the furnishing of material. ''Occasional repairs subsequently made cannot be added to work done months before, so as to render the whole work one continued performance, for which a single lien can be claimed within sixty days after the last repairs.'' Phillips on Mechanics' Liens, 327; Davis v. Alvord, 94 U. S. 545, 24 L. Ed. 283; Appeal of Harman et al. (Pa.), 17 Atl. 140.

The last order for material was handed to John P. Cahoon, one of the plaintiffs, by Mr. Hill, the president and general manager of the Fortune Mining & Milling Company, at the company's office, one or two days before the shipment was made. Plaintiffs' attorney, with whom John P. Cahoon had been talking about the account with the company, was present at the time. This incident, together with the fact that the order was for lumber not needed at the mill, and the further fact that the plaintiffs were willing to thus extend additional credit to a company that had shown itself to be either unwilling or financially unable to pay its obligations, and thereby add to an account long past due, and one which their own testimony shows they regarded as somewhat doubtful—one of them having made one or two ineffectual attempts to collect money on it—tends to give color to the contention of the respondents that the order was given and filled for the purpose of enabling plaintiffs, one of whom was a stockholder in the company, to revive and extend the time of filing their notice of intention to claim a lien, and not for the purpose of discharging any mutual ob-

ligation growing out of the contract of November, 1899, that the parties were under to each other. To permit a contractor, long after the completion of his contract, to revive or keep alive his right of lien by tacking on and adding to his account by filling additional orders for labor or material not contemplated by his original contract, would throw open wide the doors to fraud and collusion, and in many cases defeat the very purpose and object of the statute, as it would enable the favored creditor to keep alive indefinitely his right to a lien, and at the same time prevent the property subject to lien from being reached by other lienholders whose contracts were entered into subsequent to that of his own. "It is particularly as regards the rights of bona fide purchasers and incumbrancers that the claimants of this lien are held to the strictest compliance with the statutory provisions as to the time of its enforcement. Mechanics and materialmen, it is said, should understand that any unreasonable delay in giving public notice of their intention to hold a lien is dangerous, as the public, in purchasing the property, have nothing to warn them after the building is substantially completed, and the statutory period of filing the notice of lien has expired." Phillips, Mech. Liens, 327a; Flint v. Raymond, 41 Conn. 510; Sanford v. Frost, Id. 617.

In this case, while the Salt Lake Hardware Company was foreclosing and subjecting the property in question to the payment of its claim, the plaintiffs stood quietly by, without filing any notice of their intention to claim a lien, and permitted the property, by virtue of such proceedings, to pass into the hands of an innocent purchaser. Under these circumstances, to permit the plaintiffs to establish a right to a prior lien by tacking onto their account an additional item five or six months after the completion of their contract, and calling it all "one continuous transaction," would not only be in contravention of the statute, but contrary to every principle of justice and equity.

The judgment of the lower court is affirmed; costs of this appeal to be taxed against the appellants. BASKIN, C. J., and BARTCH, J., concur.