David J. DUCKETT, dba Crockery Kitchens, Plaintiff,

v.

David W. OLSEN, et al., Defendants,

v.

Jay Gordon DRYWALL, et al., Defendants, Cross-Claimants and Respondents,

v.

David W. OLSEN, et al., (Wasatch Bank, Trustee and Beneficiary) Defendants, Cross-Defendants and Appellant.

No. 18950.

Supreme Court of Utah.

April 1, 1985.

S. Rex Lewis, Salt Lake City, for appellant.

Cullen Y. Christensen, Salt Lake City, for respondents.

PER CURIAM:

Wasatch Bank appeals from a judgment and decree of foreclosure by which the trial court declared that certain mechanic's liens, filed pursuant to U.C.A., 1953, § 38–1–1, *et seq.*,[1] were entitled to priority over the bank's trust deed on the same real property. We affirm.

The real property was owned by David and Laurie Olsen, who, in late 1980, contracted with the several materialmen and contractors for the construction of a house on the property. They arranged for financing of the construction by Wasatch Bank, which took a trust deed to the property as security. After the house was constructed, the Olsens filed a petition in bankruptcy, on October 20, 1981, and were discharged of their debts in December 1981. On December 23, 1981, the bankruptcy trustee abandoned the real property, the subject of this action, as an asset of the bankrupts'

estate. This action was filed to foreclose liens and determine the priorities of the claimants.

Construction of the residence on the property was commenced August 4, 1980, by G & C Construction Company, which excavated the basement and graded and filled the lot. G & C completed its contract and, upon receiving payment for its work, executed a lien waiver on November 21, 1980. Wasatch Bank recorded its trust deed on November 12, 1980.

The materialmen and contractors who filed mechanic's liens against the property performed their separate contracts beginning in December 1980. Construction of the residence, with the exception of final landscaping, was completed by July 1981. It is undisputed that each lien was filed in a timely manner pursuant to section 38–1–7.

Because the mechanic's lienors contracted directly with the owners, the parties stipulated, and the trial court found, that they were each original contractors under section 38–1–2. The trial court ruled that the mechanic's liens had equal priority under section 38–1–10, that the liens attached under section 38–1–5 as of the commencement of construction on August 4, 1980, and that they therefore had priority over the trust deed of Wasatch Bank. The contractors were granted judgment in the amount of their respective liens and were awarded reasonable attorney fees and costs pursuant to section 38–1–18.

Wasatch Bank contends that since the mechanic's lienors were all original contractors performing separate contracts with the owners, the liens attach from the commencement of their separate contracts, and section 38–1–5 does not apply. That section provides:

> The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subse-

1. All statutory references are to U.C.A., 1953, as amended.

quently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground . . . .

■ Section 38–1–3 provides that contractors, as well as subcontractors, and persons performing labor or furnishing materials used in the construction, are entitled to a lien upon the property. Clearly, the right to have a lien relate back to the commencement of work on the ground under section 38–1–5 is not defeated merely because the owners did not employ a general contractor.

The question is whether all the work was done pursuant to a single project contemplated by the owners. As we said in *Calder Brothers Co. v. Anderson*, Utah, 652 P.2d 922, 924 (1982):

> For one contractor's lien to relate back to the commencement of work or supplying of materials by another contractor however, both contractors' projects must have been performed in connection with what is essentially a single project performed under a common plan prosecuted with reasonable promptness and without material abandonment.

The cases cited by Wasatch Bank are not contrary to that rule. *See Gwilliam Lumber & Coal Co. v. El Monte Springs Corp.*, 87 Utah 134, 48 P.2d 463 (1935); *Cahoon & Brother v. Fortune Mining & Milling Co.*, 26 Utah 86, 72 P. 437 (1903); *Fields v. Daisy Gold Mining Co.*, 25 Utah 76, 69 P. 528 (1902). Each of these cases involved a single lien claimant who had furnished materials on a running account on which payments had been made from time to time. In each case, the question was whether the last materials furnished related to a single contract or several separate contracts between the materialman and the owner.

In *Fields*, the trial court found that all of the materials were furnished under a single contract, while in *Cahoon* and *Gwilliam*, the trial court found that separate and distinct contracts were intended. In *Gwilliam*, this Court said:

A review of this case convinces us that the question of whether all of the materials furnished over the three years were for a unit purpose contemplated in conversations between the parties in April of 1928, or whether for distinct purposes and under different contracts, as was the case in the action of *Cahoon [& Brother] v. Fortune Min. & Mill. Co.*, 26 Utah 86, 72 P. 437, was a question of fact for the court.

87 Utah 142, 48 P.2d 466.

There is no question in this case that construction of the residence as a single project was contemplated. The trial court so found, and Wasatch Bank does not contest that finding. As the evidence supports the trial court's finding, it will not be disturbed by this Court. *Gwilliam, supra.*

■ Wasatch Bank contends that because G & C Construction Co. executed a waiver of its lien and no other liens had attached prior to the recording of the trust deed, the contractors who commenced work later do not have priority over the trust deed. In *First of Denver Mortgage Investors v. C.N. Zundel and Associates*, Utah, 600 P.2d 521 (1979), we held that a release signed by one contractor does not affect the status of other contractors who were not parties to the release and did not consent to its terms. This point is, therefore, without merit.

As the contractors completed portions of their work, Wasatch Bank issued checks to them out of the construction loan funds in payment for the completed work. Imprinted on the back of these checks was a waiver of lien above the place for endorsement of the check. This waiver recites in part:

> In consideration of payment of the within check, the payee upon endorsement hereby waives and releases all lien or right of lien now existing for work or labor performed or materials furnished on or before the date of this check for the improvement of the property as described on the face of this instrument.

Wasatch Bank argues that one of the "rights of lien" waived by those contrac-

tors who accepted a check and endorsed it at any time was the right to have their liens for future work relate back to the commencement of construction on the ground.

■ This issue relates only to Joseph P. Sawyer, dba Keystone Construction, who is the only claimant remaining in the case who signed a lien waiver at any time.[2] The Bank asserts that this waiver is binding according to its terms.[3] But according to its terms, Sawyer waived only lien rights with respect to work or labor performed before the date of the check which he endorsed on November 17, 1980. Clearly, no lien or right of lien was waived for work or materials furnished at a date subsequent to the check. By his mechanic's lien, Sawyer claimed for work which he performed commencing in March 1981. He is entitled to have that lien relate back to the commencement of construction on the ground, since no rights were waived with respect to that work.

The bank further contends that the court erred in awarding attorney fees to the mechanic's lienors. Reasonable attorney fees were awarded by the court to each lienor pursuant to the provisions of section 38-1-18:

> In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action.

Wasatch Bank contends that the claims for attorney fees were discharged in the Olsens' bankruptcy proceedings and cites a single case in support of this contention: *Midwest Utility Co. v. Chicago Title & Trust Co.*, 50 Ill.App.3d 721, 8 Ill.Dec. 832, 365 N.E.2d 1294 (1977). In that case, the contract between the claimant and the owner provided for payment of fees. Since the owner's obligations under the contract were discharged in the bankruptcy proceedings, the obligation to pay fees was likewise discharged.

■ The attorney fees awarded to the contractors here, however, were not awarded as an obligation under the contracts with the owners, but were, instead, awarded pursuant to the statute as a charge against the property. The fees were, therefore, not discharged in the Olsens' bankruptcy proceedings.

Finally, Wasatch Bank asserts that the 1981 amendment to section 38-1-7 bars an award of attorney fees to those claimants who filed mechanic's liens subsequent to May 12, 1981, the effective date of the amendment,[4] as no evidence was presented that notice of lien had been sent to the owners of the property. This issue was not presented to the trial court for disposition. Issues not presented to the trial court cannot be raised for the first time on appeal.[5]

Other issues have been raised by Wasatch Bank, but as they apply only to the claims of lienors who are no longer parties to this appeal, we decline to address them.

Affirmed. Costs to respondents.

---

**2.** While this appeal was pending, Wasatch Bank settled with seven of the lienors, and the appeal was voluntarily dismissed as to those parties. The remaining respondents are: David J. Duckett, dba Crockery Kitchens, who furnished and installed kitchen cabinets; Jay Gordon Drywall, which furnished and installed sheet rock; Lynn T. Lowry, dba Lowry Overhead Doors, who installed two garage doors with automatic openers; and Joseph P. Sawyer, dba Keystone Construction, who claimed a lien for landscaping, earth moving and topsoil.

**3.** *See J.P. Koch, Inc. v. J.C. Penney Co.*, Utah, 534 P.2d 903 (1975).

**4.** This issue is raised only with respect to the claim of David J. Duckett, dba Crockery Kitchens, as all other claimants who filed mechanic's liens after May 12, 1981, have settled with the bank and have been dismissed from this appeal. The lien filed by Duckett shows on its face that notice of the lien was sent to the owners, the Olsens, within the time required under section 38-1-7 as amended in 1981.

**5.** *Franklin Financial v. New Empire Development Co.*, Utah, 659 P.2d 1040 (1983); *Shayne v. Stanley & Sons, Inc.*, Utah, 605 P.2d 775 (1980); *Nelson v. Newman*, Utah, 583 P.2d 601 (1978).