WACHOVIA BANK NATIONAL ASSOCIATION, AND PRESERVE HOLDINGS, LLC, AS SUBSTITUTED SUCCESSOR, PLAINTIFF V. SUPERIOR CONSTRUCTION CORPORATION, GEORGE ROUNTREE, III, RECEIVER FOR INTRACOASTAL LIVING, LLC; WESTERN SURETY COMPANY AND COASTAL SASH & DOOR, DEFENDANT

No. COA10-1158

(Filed 19 July 2011)

**1. Liens— materialman's lien—date of first furnishing—prior to date of deed of trust—partial lien waivers—ineffective to change date of first furnishing**

The trial court erred in a lien case by granting plaintiff Preserve Holdings, LLC's motion for judgment on the pleadings. As a result of the fact that defendant Superior Construction Corporation (Superior) first furnished labor and materials at The Preserve prior to the date upon which plaintiff Wachovia's deed of trust was recorded, defendant Superior's lien had priority over that of Wachovia. The partial lien waivers signed by defendant Superior did not effectively change the date of first furnishing of labor and materials from 22 April 2005 to 31 May 2005.

Appeal by defendants from judgment entered 23 April 2010 by Judge John R. Jolly, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 February 2011.

*Shumaker, Loop & Kendrick, LLP, by Frederick M. Thurman, Jr., Steele B. Windle, III, and Bonnie Keith Green for Defendant-Appellant Superior Construction Corporation.*

*Conner Gwyn Schenck, PLLC, by C. Hamilton Jarrett and Luke J. Farley, for Defendant-Appellant Western Surety Company.*

*Andresen & Arronte, PLLC, by Kenneth P. Andresen, for Defendant-Appellee Preserve Holdings, LLC.*

*Nexsen Pruet, PLLC, by Eric H. Biesecker, Richard W. Wilson, and David A. Luzum, for amicus curiae American Subcontractors Association, Inc., and American Association of the Carolinas.*

ERVIN, Judge.

Defendants Superior Construction Corporation and Western Surety Company appeal from an order granting judgment on the pleadings in favor of Preserve Holdings, LLC, and determining that Preserve Holdings' lien arising from a deed of trust in favor of Wachovia Bank & Trust Co., N.A., had priority over Defendant Superior's contractor's lien. On appeal, Defendants argue that the trial court erred by granting judgment on the pleadings in favor of Preserve Holdings on the grounds that Defendant Superior's contractor's lien had priority over the lien created by the Wachovia deed of trust. After careful consideration of Defendants' challenges to the trial court's order in light of the record and the applicable law, we conclude that Defendants' arguments have merit, that the trial court's order should be reversed, and that this case should be remanded to the Mecklenburg County Superior Court for further proceedings not inconsistent with this opinion.

## I. Background

On 21 January 2005, Intracoastal Living, LLC, entered into a contract with Defendant Superior pursuant to which Defendant Superior, acting as general contractor, agreed to construct certain improvements on real estate owned by Intracoastal Living known as The Preserve at Oak Island. In return, Intracoastal Living agreed to pay $19,300,000.00 to Defendant Superior for performing the necessary construction work. Defendant Superior first furnished labor and materials under the contract on 22 April 2005.

In April 2005, Wachovia agreed to loan money to Intracoastal Living for the purpose of funding construction activities at The Preserve. On 19 May 2005, Intracoastal Living executed a construction loan agreement, a $22,835,000.00 promissory note, and a properly recorded deed of trust in favor of Wachovia.

As construction proceeded, Defendant Superior submitted numerous applications for payment. The first two applications, which were dated 11 May 2005 and 9 June 2005, were accompanied by documents titled Partial Waiver of Lien. The two partial lien waivers contained identical language, differing only in the amount of the requested draw, the date through which Defendant Superior waived and released its lien rights, and the identity of the person signing on behalf of Defendant Superior. Both partial lien waivers provided that:

Whereas Superior Const. has been employed by [Intracoastal] LLC to furnish labor and/or materials for the project known as [The Preserve.]

Now, therefore, the undersigned, for and in consideration of the sum of $[——,——.——] and other good and valuable consideration, the receipt whereof hereby acknowledged, do hereby waive, relinquish, surrender and release any and all lien, claim, or right to lien on the above said described project and premises, arising under and by virtue of the mechanic's lien laws of the State of North Carolina on account of any labor performed or the furnishing of any material to the above described project and premises up to and including the (day) —— of (month) ——, (year) 2005. Upon receipt of this month's draw request of $[——, ——.——] [Superior Construction] will also waive and release any and all liens or claims, or right to lien on the above project as it relates to the stated draw request.

Defendant Superior last furnished labor and materials in connection with construction activities at The Preserve on 29 June 2007, at which point it stopped work at the project due to nonpayment.

On 25 September 2007, Defendant Superior filed a claim of lien applicable to The Preserve property in which it alleged that it first furnished labor and materials on 22 April 2005 and that Intracoastal Living owed it $1,286,000.00 for construction work performed under the contract. On 23 October 2007, Wachovia filed a declaratory judgment action in which it sought a determination that the lien resulting from Wachovia's deed of trust had priority over the lien claimed by

Defendant Superior. On 14 January 2008, Defendant Superior filed an answer in which it denied that Wachovia's lien had priority over Defendant Superior's lien.

On 24 July 2008, Defendant Western Surety Company sought leave to intervene. Defendant Western Surety's request to intervene was allowed on 24 November 2008. On 4 December 2008, Defendant Western Surety filed an answer denying the material allegations of Wachovia's complaint and asserting a crossclaim against Defendant Superior and the receiver for Intracoastal and Coastal Sash & Door, George Rountree, III, in which Defendant Western Surety sought a declaration concerning the priority of Defendant Western Surety's claim to the balance owed to Defendant Superior.[1] Intracoastal filed its answer to Defendant Western Surety's crossclaim on 9 January 2009.

On 15 September 2008, Preserve Holdings, LLC, filed a motion seeking to replace Plaintiff Wachovia as the plaintiff in this case.[2] Preserve Holdings' motion was granted on 15 October 2008. On 3 November 2008, Preserve Holdings filed a motion for judgment on the pleadings. On 12 February 2010, Defendant Superior filed a summary judgment motion. On 23 April 2010, the trial court granted Preserve Holdings' motion for judgment on the pleadings, stating, in pertinent part, that:

[47] . . . [T]he Waivers clearly provide that[,] in exchange for the consideration received, Superior did "waive, relinquish, surrender and release" "any and all liens, claims or rights to liens" it might have on the Project, arising under North Carolina law, on account of the work it performed up to and including May 31, 2005. The words of waiver are clear and not ambiguous. Further, the words "any and all" suggest there was no limitation on Superior's waiver of its rights. Moreover, the "on account of" language would exclude from the waiver what future rights Superior would gain upon future provisions of labor and material. Such an interpretation would not be inconsistent with the "any and all" language.

---

1. Western Surety issued a payment bond applicable to The Preserve project on 14 May 2005. As of the date of its answer and crossclaim, Defendant Western Surety had paid $1,623,759.30 to persons that had supplied labor or materials to Defendant Superior in connection with construction activities at The Preserve. These payments formed the basis of Defendant Western Surety's claim to an interest in the funds owed to Defendant Superior.

2. Plaintiff Preserve Holdings purchased The Preserve from Wachovia at a foreclosure sale on 28 January 2008.

[48] . . . . [T]the language of the Waivers clearly and unambiguously expresses Superior's intent, and binding contractual agreement, to waive its existing lien rights, including those arising from its date of first furnishing of labor and materials on the Project, in exchange for the consideration provided by Wachovia, up to and including May 31, 2005.

[49] One effect of this contract is a change in Superior's Date of First Furnishing of labor and materials from a date preceding Wachovia's deed of trust to one after May 31, 2005, thus placing Superior's claims behind Wachovia's in priority. While such a result may seem harsh, the wording of the contract clearly demonstrates the parties' intent to achieve such a result. Superior cannot successfully rely upon the materialman's statute when it waived the statute's protections.

. . .

[50] Based upon the pleadings, the court CONCLUDES that [] the Wachovia deed of trust lien had priority over Superior's claim of lien; and that Plaintiff Preserve Holdings, LLC, as substituted Plaintiff in this action, is entitled to judgment in its favor upon the First Claim for Relief (Declaratory Judgment Regarding Lien Priority) in this matter.

(footnotes and citations omitted) Defendants noted an appeal to this Court from the trial court's order.[3]

## II. Legal Analysis

### A. Standard of Review

"A motion for judgment on the pleadings is authorized by Rule 12(c) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 12(c) [2009]. The rule's function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." Judgment on the pleadings is properly entered only if "all the material allegations of fact are admitted[,] . . . only questions of law remain" and no question of fact is left for jury determination.

---

3. The trial court's order expressly stated that its decision was "dispositive of all issues in this matter, including any issues raised by" Plaintiff Preserve Holdings' request for a determination of the amount due and "the crossclaim by [Defendant] Western [Surety] against the Receiver," so that "no action or ruling with regard to either" claim "is required." Thus, the trial court's order is a final judgment on the merits of all claims and subject to appellate review pursuant to N.C. Gen. Stat. § 7A-27(b) despite the fact that the trial court left certain issues unaddressed in its order.

"In deciding such a motion, the trial court looks solely to the pleadings. The trial court can only consider facts properly pleaded and documents referred to or attached to the pleadings." "This Court reviews *de novo* a trial court's ruling on motions for judgment on the pleadings. Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court."

*N.C. Concrete Finishers v. N.C. Farm Bureau*, —— N.C. App ——, ——, 688 S.E.2d 534, 535 (2010) (quoting *Garrett v. Winfree*, 120 N.C. App. 689, 691, 463 S.E.2d 411, 413 (1995), *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974), and *Reese v. Mecklenburg County*, —— N.C. App. ——, ——, 685 S.E.2d 34, 37-38 (2009), *disc. review denied*, 364 N.C. 242, 698 S.E.2d 653 (2010)) (internal citations omitted). As a result, since neither party has argued that the trial court impermissibly resolved a disputed factual question, the only issue before this Court in connection with Defendants' appeal is whether the trial court correctly decided that, given the information disclosed by the pleadings, Preserve Holdings was entitled to judgment in its favor as a matter of law.

### B. Relative Lien Priority

[1] On appeal, Defendants argue that the trial court erred by granting Preserve Holdings' motion for judgment on the pleadings on the grounds that Defendant "Superior[ Construction's] lien was effective as of 22 April 2005 and has priority over Wachovia's deed of trust." Defendants' argument has merit.

N.C. Gen. Stat. § 44A-8 provides, in pertinent part, that:

> Any person who performs or furnishes labor or . . . furnishes materials . . . pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.

Pursuant to N.C. Gen. Stat. § 44A-10, "[a] claim of lien on real property granted by this Article shall relate to and take effect from the time of the first furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property." "By virtue of this statute, a contractor's lien for all labor and

materials furnished pursuant to a contract is deemed prior to any liens or encumbrances attaching to the property subsequent to the date of the contractor's first furnishing of labor or materials to the construction site." *Connor Co. v. Spanish Inns*, 294 N.C. 661, 667, 242 S.E.2d 785, 789 (1978) (citing *Heating Co. v. Realty Co.*, 263 N.C. 641, 652-53, 140 S.E.2d 330, 338-39 (1965), and *Assurance Society v. Basnight*, 234 N.C. 347, 352, 67 S.E.2d 390, 394 (1951)). "The lien provided for by [N.C. Gen. Stat. §] 44A-8 is inchoate until perfected by compliance with [N.C. Gen. Stat. §§] 44A-11 and -12, and is lost if the steps required for its perfection are not taken in the manner and within the time prescribed by law. However, when a lien is validly perfected, and is subsequently enforced by bringing an action within the statutory period set forth in [N.C. Gen. Stat. §] 44A-13(a), the lien will be held to relate back and become effective from the date of the first furnishing of labor or materials under the contract, and will be deemed perfected as of that time." *Connor Co.*, 294 N.C. at 667, 242 S.E.2d at 789.

According to the parties' pleadings, the relevant events occurred in the following order:

1. 21 January 2005: Intracoastal Living and Defendant Superior entered into a contract, in which Intracoastal Living agreed to pay Defendant Superior $19,300,000.00 for work performed on a construction project.

2. 22 April 2005: Defendant Superior first furnished labor and materials for the project.

3. 11 May 2005: Defendant Superior executed a partial lien waiver in which it waived any claim of lien "on account of any labor performed or the furnishing of any material . . . up to and including [30 April 2005]."

4. 19 May 2005: Intracoastal Living executed a construction loan agreement, a promissory note in the amount of $22,835,000.00, and a deed of trust in favor of Wachovia.

5. 9 June 2005: Defendant Superior executed a partial lien waiver in which it waived any claim of lien "on account of any labor performed or the furnishing of any material . . . up to and including [31 May 2005]."

6. 25 September 2007: Defendant Superior filed a claim of lien on the property.

According to this timeline, the accuracy of which has not been disputed on appeal, Defendant Superior first furnished labor and materials at The Preserve on 22 April 2005, approximately one month prior to the date upon which the deed of trust in favor of Wachovia was recorded. As a result of the fact that Defendant Superior first furnished labor and materials at The Preserve prior to the date upon which Wachovia's deed of trust was recorded, Defendant Superior's lien would ordinarily have priority over that of Wachovia. The only way in which Wachovia's deed of trust could be deemed to take priority over Defendant Superior's mechanics' lien is in the event that the partial lien waivers signed by Defendant Superior have the effect of subordinating its entire claim to those creditors with liens perfected prior to the date upon which Defendant Superior signed the second partial lien waiver. We do not believe that the partial lien waivers signed by Defendant Superior have that effect and conclude that the trial court erred by reaching a contrary conclusion.

As the trial court recognized, "[l]ien waivers are interpreted according to the principles applied to contracts in general[.]" *Cowper v. Watermark Marina of Wilmington*, 2009 Bankr. LEXIS 3896 *4 (U.S. Bank. Ct. E.D.N.C. 2009) (citing *Chemimetals Processing, Inc. v. Schrimscher*, 140 N.C. App. 135, 138, 535 S.E.2d 594, 596 (2000) (stating that "[r]eleases are contractual in nature, and their interpretation is governed by the same rules governing the interpretation of contracts") (citations omitted)). As a result, the ultimate issue which we must decide in order to resolve Defendants' challenge to the trial court's order is whether the relevant provisions of the partial lien waivers had the effect of subordinating Defendant Superior's lien to all other secured creditors with perfected liens as of the date of the second partial lien waiver or whether they merely released the labor and materials costs for which Defendant Superior had been reimbursed as of the date of the second partial lien waiver.

"Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Gilmore v. Garner*, 157 N.C. App. 664, 666, 580 S.E.2d 15, 18 (2003) (quoting *Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973)). "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.* 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948). "If the plain language of a contract is clear, the intention of the parties is inferred from the

words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "[I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000) (quoting *Woods v. Insurance Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978)). "An ambiguity exists in the event that the relevant contractual language is fairly and reasonably susceptible to multiple constructions." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993) (citing *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988)). "The trial court's determination of whether the language in a contract is ambiguous is a question of law[.]" *Duke Energy Corp. v Malcolm*, 178 N.C. App. 62, 65, 630 S.E.2d 693, 695 (citing *Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996), *disc. review denied*, 346 N.C. App. 275, 487 S.E.2d 538 (1997)), *aff'd*, 361 N.C. 111, 637 S.E.2d 538 (2006).

Although a party may certainly elect to forgo the protections of N.C. Gen. Stat. § 44A-7, *et. seq.*, including its right to have its lien treated as having taken effect from the date of first furnishing of labor or materials, by executing a lien waiver, *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 660, 403 S.E.2d 291, 297 (1991) (stating that "the use of lien waivers, used other than in anticipation of and in consideration for the awarding of a contract, may also minimize liability by contractors who deal with the owner"), the scope of the rights waived hinges upon a proper understanding of the relevant waiver language. As a result of the fact that, as the trial court concluded and both parties appear to agree, the language of the partial lien waivers is unambiguous, the only step we need to take in order to resolve the issues raised by Defendants' appeal is to construe the relevant language.

Although the trial court concluded, consistently with Preserve Holdings' argument, that the partial lien waivers signed by Defendant Superior effectively changed the date of first furnishing of labor and materials from 22 April 2005 to 31 May 2005, this argument misconstrues the literal language of the partial lien waivers, which state that Defendant Superior "do[es] hereby waive, relinquish, surrender and release any and all lien, claim, or right to lien on the above said described project and premises, arising under and by virtue of the

mechanic's lien laws of the State of North Carolina on account of any labor performed or the furnishing of any material to the above described project and premises up to and including the [date specified in the partial lien waiver]." The critical language for the purpose of resolving the present dispute is the "on account of" provision, which clearly specifies the scope of the rights that Defendant Superior waived by signing the partial lien waivers. Thus, we must focus our inquiry on the meaning of the language providing that Defendant Superior waived "any and all" lien rights "on account of" the furnishing of labor or materials up to the date specified in the partial lien waiver.[4]

In *Rousey v. Jacoway*, 544 U.S. 320, 161 L. Ed. 2d 563, 125 S. Ct. 1561 (2005), the United States Supreme Court addressed the meaning of "on account of" in the context of construing bankruptcy exemptions for certain payments received "on account of illness, disability, death, age, or length of service." At that time, the United States Supreme Court stated that:

> We turn first to the requirement that the payment be "on account of illness, disability, death, age, or length of service." We have interpreted the phrase "on account of" elsewhere within the Bankruptcy Code to mean "because of," thereby requiring a causal connection between the term that the phrase "on account of" modifies and the factor specified in the statute at issue. . . . This meaning comports with the common understanding of "on account of." *See, e.g.,* Random House Dictionary of the English Language 13 (2d ed. 1987) (listing as definitions "by reason of," "because of")[.]

*Rousey*, 544 U.S. at 326, 161 L. Ed. 2d at 571, 125 S. Ct. at 1566 (quoting *Bank of America Nat. Trust & Saving Ass'n. v. 203 North LaSalle Partnership*, 526 U.S. 434, 450-51, 143 L. Ed. 2d 607, 621, 119 S. Ct. 1141, 1420 (1999)). We find the United States Supreme Court's analysis of the meaning of the expression "on account of" to be per-

---

4. In its order, the trial court focused on the fact that Defendant Superior waived "any and all" of the rights that had accrued on account of the labor and material that had been furnished as of the relevant date, noting the unconditional nature of this language. The trial court's analysis overlooks, however, the fact that the rights waived necessarily had to arise from labor or materials supplied as of the relevant date. As a result, while we agree that Defendant Superior certainly waived "any and all" rights that might have existed "on account of" the furnishing of labor and materials as of the date of the second partial lien waiver, that fact does not determine the extent to which particular rights had been acquired "on account of" that furnishing of labor or materials.

suasive and conclude that the plain meaning of a waiver of lien rights arising "on account of" labor performed before 31 May 2005 is that the only lien rights being waived are those arising "because of," "as a result of," or "on the basis of" work done prior to the relevant date. The language utilized in the partial lien waivers does not in any way refer to a waiver of Defendant Superior's "place in line;" instead, it simply refers to a waiver of "any and all" lien rights applicable to specific payments. In essence, the partial lien waivers at issue in this case function as an acknowledgement that a payment for labor and materials expended through a certain date has been made and that Defendant Superior has no further lien rights in the furnishing of labor and materials reimbursed by those payments. Thus, we conclude that the partial lien waivers executed by Defendant Superior merely operated as a waiver of its right to claim a lien on amounts for which it had been paid in return for supplying labor and materials before 31 May 2005 relating back to 22 April 2005, the date upon which it first furnished labor and materials at The Preserve. *See Metropolitan Federal Bank v. A.J. Allen*, 477 N.W. 2d 668, 673-75 (Iowa 1991) (holding that a statutory lien waiver provision resulting in the waiver of "any and all lien or claim of, or rights to, lien . . . account of labor [or] services . . . furnished up to and including" the date of payment did not waive the priority of the contractor's lien and that "[a]ny . . . lien rights . . . accruing subsequent to the issuance of the initial lien waiver documents relate back to the commencement of their work"); *Duckett v. Olson*, 699 P.2d 734, 736-37 (Utah 1985) (holding that a lien waiver provision releasing "all lien or right of lien now existing for work or labor performed or materials furnished on or before the date of" payment did not waive the contractor's "lien or right of lien . . . for work or materials furnished at a date subsequent to" payment).

In seeking to persuade us to affirm the trial court's decision, Preserve Holdings asserts, in essence, that this Court is bound by the trial court's determination that "the language of the [partial lien w]aivers clearly and unambiguously expresses [Defendant] Superior's intent, and binding contractual agreement, to waive its existing lien rights, including those arising from its date of first furnishing of labor and materials on the Project, in exchange for the consideration provided by Wachovia, up to and including May 31, 2005." In support of this assertion, Preserve Holdings points to this Court's statement that "[t]he trial court's determination of original intent is a question of fact" and that "[i]ssues of fact resolved by the trial court in a declaratory judgment action are 'conclusive on appeal if sup-

ported by competent evidence in the record, even if there exists evidence to the contrary.' " *Bicket*, 124 N.C. App. at 552, 478 S.E.2d at 521 (quoting *Miesch v. Ocean Dunes Homeowners Assn.*, 120 N.C. App. 559, 562, 464 S.E.2d 64, 67 (1995), *disc. review denied*, 342 N.C. 657, 467 S.E.2d 717 (1996)). The fundamental problem with Preserve Holdings' reliance on the quoted language from *Bicket* is that, in the present case, the trial court properly did not make any factual findings addressing the parties' intent in deciding that Preserve Holdings' motion for judgment on the pleadings should be granted. *See Erickson v. Starling*, 235 N.C. 643, 657, 71 S.E.2d 384, 394 (1952) (stating that, "[o]n a motion for judgment on the pleadings, the presiding judge should consider the pleadings, and nothing else" and "should not hear extrinsic evidence, or make findings of fact") (citing *Johnson v. Insurance Co.*, 219 N.C. 445, 448, 14 S.E.2d 405, 406 (1941)) (other citation omitted). Instead, the trial court derived its view of the parties' intent, which it expressly and properly labeled a conclusion rather than a finding, by examining the relevant portions of the partial lien waivers. As the result of the fact that the construction of unambiguous contractual language is clearly an issue of law for the Court, *Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008) (stating that "[a] contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law") (citing *Lane*, 284 N.C. at 407, 410, 200 S.E.2d 622, 624 (1973)), we are not obligated to give any deference to the trial court's conclusion concerning the intent of the parties as expressed in the relevant contractual language. Thus, the fact that the trial court reached a particular decision with respect to the manner in which the relevant language should be construed has no conclusive effect for purposes of appellate review.[5] Having examined the relevant language on appeal, we conclude that the trial court erred by construing the partial lien waivers to effectively change the date of first furnishing and that the partial lien waivers merely precluded Defendant Superior from asserting a lien relating to the amounts

---

5. Even if the proper interpretation of the partial lien waivers is treated as a question of fact rather than a question of law subject to *de novo* review, the trial court's determinations are entitled to deference on appeal only if adequately supported by the record. In this case, the only relevant material in the record concerning the parties' intent consisted of the partial lien waivers themselves. As a result, ascertaining the parties' intent ultimately comes down to an examination of the language of the partial lien waivers signed by Defendant Superior. Having carefully examined that language, we do not believe that it provides adequate support for the trial court's decision. As a result, we do not believe that the extent to which one treats this issue as one of law or fact affects the outcome in this instance.

already paid for work performed at The Preserve without having any further effect.

### III. Conclusion

Therefore, for the reasons set forth above, we conclude that Defendant Superior's lien has priority over that created by Wachovia's deed of trust and that the trial court erred by concluding otherwise. As a result, the trial court's order should be, and hereby is, reversed and this case should be, and hereby is, remanded to the Mecklenburg County Superior Court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges ROBERT C. HUNTER and STEPHENS concur.