IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-751

Filed 16 July 2024

Mecklenburg County, No. 22 CVS 540

ATLANTECH DISTRIBUTION INC., Plaintiff,

v.

LAND COAST INSULATION, INC., MATRIX SERVICE, INC.; DUKE ENERGY BUSINESS SERVICES, LLC; PIEDMONT NATURAL GAS COMPANY, INC. and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendants.

Appeal by Defendants from Order entered 9 March 2023 by Judge Carla Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 January 2024.

*Johnston, Allison & Hord, P.A., by B. David Carson, David E. Stevens and Grace E. Ketron, for Plaintiff-Appellee.*

*Lewis Brisbois Bisgaard & Smith LLP, by Eric G. Sauls and Jonathan M. Preziosi, admitted pro hac vice, for Defendants-Appellants.*

HAMPSON, Judge.

## Factual and Procedural Background

Matrix Service, Inc. (Matrix), Duke Energy Business Services, LLC (Duke Energy), Piedmont Natural Gas Company, Inc. (PNG), and Fidelity and Deposit Company of Maryland (Fidelity) (collectively, Defendants) appeal from an Order granting Summary Judgment in favor of Plaintiff-Appellee Atlantech Distribution Inc. (Atlantech). The Record before us tends to reflect the following:

On or about 30 April 2019, Matrix entered into a contract with PNG (the Primary Contract), a subsidiary of Duke Energy, to perform certain engineering, procurement, and construction services for PNG's Robeson County LNG Peak-Shaving Facility (the Project). The value of the Primary Contract was nearly $200 million. On or about 9 August 2019, Matrix obtained its first building permit for the Project. On 3 July 2019, Matrix filed a Notice of Contract with the Robeson County Clerk of Court. However, Matrix has never provided any evidence a Notice of Contract was posted at the Project site at any time.

On or about 5 February 2021, Matrix entered into an Equipment Piping Insulation Subcontract with LandCoast Insulation, Inc. (LandCoast) for LandCoast to perform certain insulation work for the Project for $1,506,826. On 13 April 2021, LandCoast entered into a Purchase Order Agreement with Atlantech. Under the Agreement, Atlantech, serving as a second-tier subcontractor, agreed to furnish insulation and other related materials to the Project. Pursuant to the Purchase Order Agreement, as LandCoast purchased materials on account for the Project, Atlantech was to deliver the purchased materials to the Project. On or about 1 February 2021, Atlantech provided a Notice to Lien Agent for its furnishing of materials on the Project.

Pursuant to the Purchase Order Agreement, between March and July 2021, LandCoast ordered and purchased a total of $762,724.74 in insulation and related materials from Atlantech for use on the Project. For each of LandCoast's material

orders, Atlantech issued an invoice and sales order showing delivery of the materials to the Project. As of 28 July 2021, Atlantech had delivered the full amount of $762,724.74 in materials to the Project and had not received any payment from LandCoast. Due to LandCoast's failure to make payment, Atlantech served a Notice of Claim of Lien Upon Funds by Subcontractor to Matrix, LandCoast, and Duke Energy on 29 July 2021. Following LandCoast's termination from the Project, Atlantech agreed to continue providing insulation materials for Matrix's work on the Project and began directly assisting Matrix.

During the course of Matrix's work on the Project, it submitted periodic invoices to PNG for the labor and materials it had furnished in a given period. With each invoice, Matrix also provided a Contractor's Partial Lien Waiver and Release. The partial lien waivers stated: "[Matrix], in consideration of payment in the amount of $ [invoice amount] waives and releases its lien of any right which it now has or in the future may have to claim a lien for Equipment provided or Services performed prior to or during the period for which the Payment Invoice to which this Lien Waiver and Release relates[.]" Matrix submitted the relevant invoices and partial lien waivers on 19 July 2021, 16 September 2021, and 14 October 2021.[1]

---

[1] During its tenure on the Project, LandCoast likewise issued partial lien waivers with its invoices. However, LandCoast is not a party to this action, and Matrix's partial lien waivers are the basis for Defendants' claim.

On or about 14 October 2021, Matrix posted a Release of Lien Bond with Fidelity as surety in the amount of $953,408.43 to discharge Atlantech's 29 July Lien Upon Funds. Under the terms of the Bond, Fidelity agreed to ensure payment by Matrix for the amount determined to be due in satisfaction of the 29 July Lien Upon Funds, as well as any subsequent lien filed on the Project.

On 15 November 2021, Atlantech served a Notice of Claim of Lien Upon Funds by Second-Tier Contractor–Supplement on LandCoast, Matrix, Duke Energy, and PNG in the amount of $762,724.74 plus interest. The same day, Atlantech served a Subrogation Claim of Lien on Real Property by Second-Tier Subcontractor (Subrogation Lien on Real Property) on LandCoast, Matrix, Duke Energy, and PNG, and it filed a copy with the Robeson County Clerk of Court. The Subrogation Lien on Real Property was recorded with the Robeson County Clerk on 18 November 2021.

At the time Atlantech filed its Subrogation Lien on Real Property, Matrix was continuing to send invoices and partial lien waivers to PNG for work performed on the Project. On 14 October 2021, Matrix issued invoices to PNG for $822,110.83 and $3,714,056.58. PNG paid both invoices on or around 2 December and 13 December 2021, respectively—after Atlantech had perfected its Subrogation Lien on Real Property. On 23 November 2021, Matrix submitted an invoice to PNG for $1,857,028.29, which PNG paid on 22 December 2021. On 14 January 2022, Matrix submitted another invoice to PNG in the amount of $844,239.37, which PNG paid on 16 February 2022.

On 14 January 2022, Atlantech filed a Complaint against Defendants asserting a lien on real property, a claim of lien upon funds, and a claim against the Fidelity bond Matrix had posted on 14 October 2021. On 9 March 2022, Fidelity and PNG filed their respective Answers to the Complaint. On 25 March 2022, Matrix filed its Answer, as well as a Counterclaim and Crossclaim. On 23 November 2022, Atlantech filed a Motion for Summary Judgment on its claim for a lien against real property. The same day, Defendants filed a Motion for Partial Summary Judgment seeking dismissal of Atlantech's claim for a lien against real property. The trial court heard arguments on 14 December 2022.

On 9 March 2023, the trial court entered an Order granting Atlantech's Motion for Summary Judgment on its claim for a lien against real property and denying Defendants' Motion for Partial Summary Judgment with respect to Atlantech's claim for a lien against real property. On 10 April 2023, Defendants timely filed Notice of Appeal. On 15 June 2023, the trial court granted Defendants' Motion to Stay Judgment Pending Appeal and Set an Amount of Undertaking pursuant to N.C. Gen. Stat. § 1-289. Defendants filed a supersedeas bond in the amount of $950,000 on 28 July 2023 to secure the stay.

## Issue

The dispositive issue on appeal is whether the trial court erred by granting Summary Judgment for Atlantech.[2]

## Analysis

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted); *see also Rawls & Assocs. v. Hurst*, 144 N.C. App. 286, 289, 550 S.E.2d 219, 222 (2001) ("A summary judgment motion should be granted when, based upon the pleadings and supporting materials, the trial court determines that only questions of law, not fact, are to be decided." (citation omitted)). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and quotation marks omitted).

Our Supreme Court considered the subrogation lien rights of second-tier subcontractors in *Electric Supply Company of Durham, Inc. v. Swain Electric Company, Inc.*, 328 N.C. 651, 403 S.E.2d 291 (1991). In *Swain*, our Supreme Court

---

[2] Defendants additionally contend the trial court erred by denying their Motion for Partial Summary Judgment seeking dismissal of Atlantech's claim for subrogation of lien on real property. Because we conclude the trial court did not err by granting Atlantech's Motion for Summary Judgment, we do not reach this issue.

held a second-tier subcontractor may enforce its subrogation claim of lien on real property when a first-tier subcontractor fails to pay it for works or materials supplied on a construction project. *Id.* at 661-62, 403 S.E.2d at 297-98. In such cases, the second-tier subcontractor may step into the general contractor's shoes to enforce lien rights against the owner to the extent the general contractor has any such lien rights. *Id.* at 661, 403 S.E.2d at 297. When a second-tier subcontractor asserts its subrogation lien rights, the property owner is exposed to pay the second-tier subcontractor—even if the owner has already paid the general contractor for the same work or materials. *Id.* Thus, a second-tier subcontractor's right to claim a lien on real property exposes a property owner to a risk of double payment to its first- and second-tier subcontractors. *Id.*

Following *Swain*, our General Assembly enacted N.C. Gen. Stat. § 44A-23(b), which established a statutory mechanism by which general contractors may protect themselves from this risk of double payment. The statute provides, in pertinent part, a subcontractor may not enforce a claim of lien on real property when

> [t]he owner or contractor, within 30 days following the date the permit is issued for the improvement of the real property involved or within 30 days following the date the contractor is awarded the contract for the improvement of the real property involved, whichever is later, posts on the property in a visible location adjacent to the posted permit, if a permit is required, and files in the office of the clerk of superior court in each county wherein the real property to be improved is located, a completed and signed notice of contract form . . . .

N.C. Gen. Stat. § 44A-23(b)(1)(a) (2021).

As an initial matter, Matrix could have filed and posted a Notice of Contract at the job site to eliminate the risk of double payment pursuant to N.C. Gen. Stat. § 44A-23(b). Although Matrix filed a Notice of Contract with the Robeson County Clerk of Court on 3 July 2019, Matrix admitted it did not post a Notice of Contract at the Project at any time. Having failed to utilize the Notice of Contract method, Matrix could have extinguished Atlantech's subrogation lien rights by issuing a lien waiver.

> A lien waiver signed by the contractor before the occurrence of all of the actions specified in subsection (a1) [first-tier subcontractor's perfection of its claim of lien on real property] and subdivision (5) of subsection (b) of this section [second- or third-tier subcontractor's perfection of its claim of lien on real property] waives the subcontractor's right to enforce the contractor's claim of lien on real property[.]

N.C. Gen. Stat. § 44A-23(c) (2021).

Instead, Matrix provided conditional, partial lien waivers to PNG with its invoices for consideration of the payments to be made by PNG on the Project. While a lien waiver releases a claimant's right to file a claim of lien on real property in consideration for final payment upon completion of all work on a project, *see Waiver (3)*, BLACK'S LAW DICTIONARY (11th ed. 2019), a partial lien waiver, by its plain language, releases a claimant's right to file a claim of lien on real property in consideration for progress payments made during the course of a construction

project.[3] *See Wachovia Bank Nat'l Ass'n v. Superior Const. Corp.*, 213 N.C. App. 341, 351, 718 S.E.2d 160, 166 (2011) ("In essence, the partial lien waivers at issue in this case function as an acknowledgement that a payment for labor and materials expended through a certain date has been made and that Defendant Superior has no further lien rights in the furnishing of labor and materials reimbursed by those payments."). Thus, when a party issues a partial lien waiver, that party may then file a claim of lien only for services or materials furnished after the date of that partial lien waiver.

Although the use of partial lien waivers may be commonplace, our statutory provisions governing subrogation rights only contemplate "lien waivers." *See* N.C. Gen. Stat. § 44A-23(c) (2021). "Unless the contrary appears, it is presumed that the Legislature intended the words of the statute to be given the meaning which they had in ordinary speech at the time the statute was enacted." *Lafayette Transp. Serv., Inc. v. Robeson Cnty.*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973) (citations omitted). Moreover, "[c]ourts should 'give effect to the words actually used in a statute' and should neither 'delete words used' nor 'insert words not used' in the relevant statutory language during the statutory construction process." *Midrex Techs., Inc. v. N.C. Dep't*

---

[3] Here, the partial lien waivers at issue read: "[Matrix], in consideration of payment in the amount of $ [invoice amount] waives and releases its lien and any right which it now has or in the future may have to claim a lien for Equipment provided or Services performed *prior to or during the period for which the Payment Invoice to which this Lien Waiver and Release relates*[.]"

*of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (quoting *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (citations omitted)). Accordingly, we decline to read N.C. Gen. Stat. § 44A-23(c) as referring to partial lien waivers in the absence of evidence clearly establishing that intent.

In *Swain*, our Supreme Court expressly held "N.C.G.S. § 44A-23 provides first-, second-, and third-tier subcontractors a separate right of subrogation to the lien of the contractor who deals with the owner[.]" 328 N.C. at 660, 403 S.E.2d at 297. The Court clarified that "in light of the policy behind the passage of N.C.G.S. § 44A-23, the subcontractor may assert whatever lien that the contractor who dealt with the owner has against the owner's real property relating to the project." *Id.* at 661, 403 S.E.2d at 297 (citation omitted). This right could, however, be abrogated before the subcontractor began an action "through waiver of the lien or acceptance of payment." *Id.* at 661, 403 S.E.2d at 298 (citations omitted).

Following *Swain*, this Court determined a subcontractor's subrogation right is "limited . . . by the lien rights the contractor has in the property." *Vulcan Materials Co. v. Fowler Contracting Corp.*, 111 N.C. App. 919, 921, 433 S.E.2d 462, 463 (1993). Further, "[b]ecause [subcontractors] are subrogated to the rights of the general contractor, they may assert only the lien rights which the general contractor has in the project." *Id.* at 922, 433 S.E.2d at 464 (citing *Swain*, 328 N.C. at 661, 403 S.E.2d at 297). Thus, this Court in *Vulcan* held a subcontractor may only enforce a lien for up to the amount due on the primary contract, even if the amount the subcontractor

is owed exceeds that amount. *Id.* Further, under our statutes, "a contractor's lien for all labor and materials furnished pursuant to a contract is deemed prior to any liens or encumbrances attaching to the property subsequent to the date of the contractor's first furnishing of labor or materials to the construction site." *Wachovia*, 213 N.C. App. at 346-47, 718 S.E.2d at 163-64 (quoting *Frank H. Connor Co. v. Spanish Inns Charlotte, Ltd.*, 294 N.C. 661, 667, 242 S.E.2d 785, 789 (1978) (citations omitted)). Thus, when a lien is perfected and enforced by bringing an action within the statutory period, "the lien will be held to relate back and become effective from the date of the first furnishing of labor or materials under the contract, and will be deemed perfected as of that time." *Id.* at 347, 718 S.E.2d at 164 (quoting *Connor Co.*, 294 N.C. at 667, 242 S.E.2d at 789).

The consistent teaching of these cases is that partial lien waivers do not extinguish a subcontractor's subrogation rights; however, a partial lien waiver may limit the amount of a subcontractor's claim to the amount remaining on the primary contract following the latest partial lien waiver if that amount is less than the amount owed to the subcontractor. *Vulcan*, 111 N.C. App. at 922, 433 S.E.2d at 464 (citing *Swain*, 328 N.C. App. at 661, 403 S.E.2d at 297). Consistent with this precedent, Atlantech's lien rights relate back to the date it first furnished labor or materials. Atlantech retains lien rights to the extent of their claim amount for the services and materials it furnished. *Wachovia*, 213 N.C. App. at 347, 718 S.E.2d at 164 (citation

omitted). The effect of the partial lien waivers, then, was to cap the amount Atlantech could potentially claim as a lien to the amount remaining on the Primary Contract.

In this case, Atlantech served a Notice of Claim of Lien Upon Funds by Second-Tier Contractor on 15 November 2021. At that time, Matrix had two outstanding invoices that had been submitted but not yet paid by Duke Energy and PNG—one for $822,110.83 and the other for $3,714,056.58. Matrix later submitted additional invoices to Duke Energy and PNG for $1,857,028.29 and $844,239.37 respectively after Atlantech had perfected its Subrogation Lien on Real Property. As such, at the time Atlantech perfected its Subrogation Lien, the amount outstanding on the Primary Contract far exceeded the amount of its claim for $762,724.74 plus interest. *See Wachovia*, 213 N.C. App. at 347, 718 S.E.2d at 164.

Thus, because the amount of Atlantech's claim was less than the amount outstanding on the Primary Contract when Atlantech perfected its Subrogation Lien, Atlantech was entitled to lien rights for the entirety of its claim. Therefore, based on the pleadings and materials in the Record, we conclude Atlantech was entitled to judgment as a matter of law for the full amount of its lien. Consequently, the trial court did not err by granting Summary Judgment for Atlantech.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's grant of Summary Judgment for Atlantech.

AFFIRMED.

Judges COLLINS and THOMPSON concur.