Brown v. Secor, 2017 NCBC 65.

STATE OF NORTH CAROLINA

CLEVELAND COUNTY

DOUGLAS BROWN,

          Plaintiff,

v.

ARTHUR D. SECOR; SECOR GROUP, LLC; JOSEPH CHRISTOPHER ROSSO; ROSSO GROUP, LLC; and SOUTHGROUP REAL ESTATE MARKETING, LLC,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 608

**ORDER AND OPINION
ON RULE 12 MOTIONS AND
DISCOVERY MOTIONS**

1. In May 2013, Plaintiff Douglas Brown and Defendant Arthur Secor entered into an oral agreement in which Brown would invest in Secor's real estate deals. Three deals and three years later, Brown brought this suit, alleging that his $2 million investment has vanished. Brown contends that Secor, Defendant Joseph Rosso (Secor's business partner), and several entities controlled by Secor and Rosso are liable for a host of wrongs from breach of contract to fraud to securities violations. Brown also seeks a declaratory judgment regarding his alleged membership interest in Defendant Southgroup Real Estate Marketing, LLC ("Southgroup").

2. This Order addresses six pending motions. Defendants jointly moved for judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure, seeking dismissal of all claims except breach of contract ("Rule 12(c) Motion"). Rosso and Defendant Secor Group, LLC ("Secor Group") additionally moved to dismiss the claim for breach of contract under Rule 12(b)(6) ("Rule 12(b)(6) Motion"). Finally, after engaging in the procedure set forth in Rule 10.9 of the

General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), and after having been given permission by the Court to do so, the parties filed cross-motions as to two discovery disputes: Brown filed two motions to compel the production of certain documents and information ("Motions to Compel"), and Defendants cross-moved for a protective order ("Motions for Protective Order").

3. Having considered the parties' filings and arguments, the Court **GRANTS** the Rule 12(b)(6) Motion, **GRANTS in part** and **DENIES in part** the Rule 12(c) Motion, **GRANTS in part** and **DENIES in part** the Motions to Compel, and **GRANTS in part** and **DENIES in part** the Motions for Protective Order.

> *Gray, Layton, Kersh, Solomon, Furr & Smith, P.A. by Michael L. Carpenter and Marshall P. Walker for Plaintiff.*
>
> *Parker Poe Adams & Bernstein LLP by Morgan H. Rogers and Eric A. Frick for Defendants.*

Conrad, Judge.

I.
BACKGROUND

A. Factual History

4. The Court does not make findings of fact in deciding motions filed under Rule 12(b)(6) or Rule 12(c). The following factual summary is drawn from relevant allegations in the pleadings and the attached exhibits.

5. Secor and Rosso are businessmen and residents of Mecklenburg County, North Carolina. (Am. Compl. ¶¶ 2, 4.) Secor is the principal owner and manager of Secor Group, and Rosso is the principal owner and manager of Defendant Rosso

Group, LLC ("Rosso Group"). (Am. Compl. ¶¶ 3, 5.) Secor and Rosso also do business using the name LW Land, which is not an incorporated entity. (Am. Compl. ¶ 7.)

6. In early 2013, Secor met with Brown for the purpose of soliciting Brown's investment in certain real estate deals. (*See* Am. Compl. ¶¶ 1, 8.) Secor represented that he had many investors in various properties he was marketing or developing. (Am. Compl. ¶ 9.) Rosso did not attend the meeting, and Rosso's relationship with Secor was not discussed. (Am. Compl. ¶¶ 8–9; *see also* Am. Compl. ¶ 16.)

7. A further meeting resulted in an oral agreement in which Brown promised to finance real estate investments to be held by Southgroup, another entity controlled by Secor. (*See* Am. Compl. ¶ 11.) According to Brown, he and Secor agreed to split any profits from the real estate investments "50/50 at the time of sale" after Brown "received a return of his principal investment plus six percent (6%) interest." (Am. Compl. ¶ 11; *see also* Am. Compl. ¶ 47.)

8. Defendants admit there was an oral agreement but disagree with Brown over its terms. (*See* Am. Answer ¶ 11.) Among other things, they allege that "Brown promised to provide the funding for all of Secor Group's and Southgroup's land acquisitions." (Am. Countercls. ¶ 18.)

9. Between May 13 and June 27, 2013, Brown made five fund transfers totaling $1,799,488.17 for the purpose of acquiring real property in the name of Southgroup. (*See* Am. Compl. ¶¶ 12, 16, 18.) The first two transfers related to a North Carolina property called Black Bear Falls. (Am. Compl. ¶ 12.) Brown alleges Secor failed to disclose at the time of the oral agreement that Secor was buying out his former

investors and that Black Bear Falls was subject to a $300,000 mortgage. (Am. Compl. ¶ 13.) The next two transfers related to property in Ashe County, North Carolina (Am. Compl. ¶ 14), and the final transfer related to a development in Georgia called Nature's Courtyard (Am. Compl. ¶ 15). Apart from one $50,000 transfer made to LW Land, each transfer of funds was made to a law firm involved in the respective real estate transactions. (*See* Am. Compl. ¶¶ 12–16.)

10. After June 27, 2013, Brown refused to make further advances without "documentation of the relationship between the parties." (Am. Compl. ¶ 19.) Brown also alleges that, around this time, he met with Rosso "for the first time during an additional solicitation of funds." (Am. Compl. ¶ 16.)

11. In response to Brown's concerns, Secor "personally represented" that the Nature's Courtyard property would be sold the next month "'at a substantial profit.'" (Am. Compl. ¶ 20(a).) Secor also sent Brown two documents. The first, a "Marketing Summary" for LW Land, stated that Nature's Courtyard would be sold by August 17, 2013, for between $990,000 and $1,320,000, contingent on an additional transfer of $300,000 from Brown. (Am. Compl. ¶ 20(b).) The second document was a membership interest purchase agreement ("MIPA"), which was signed by Secor on behalf of Southgroup and backdated to the date Brown first advanced funds. (*See* Am. Compl. ¶ 20; *see also* Am. Compl. Ex. A ["MIPA"].)

12. The parties sharply dispute the terms and effect of the MIPA. As relevant, Southgroup is identified as "the Seller" and represents that it owns a 100% membership interest in "the Company," which is not named but is defined as "a

single-purpose entity established for the development of" Black Bear Falls and other real property, including Nature's Courtyard. (MIPA p.1.) Southgroup agreed to transfer this membership interest to Brown, who is identified as "the Buyer." (MIPA ¶ 1.) Brown interprets these provisions to mean that Southgroup is both "the Seller" and "the Company," such that the MIPA transferred to him a 100% membership interest in Southgroup. (Am. Compl. ¶¶ 17, 20–21.)

13. Defendants interpret the MIPA to state that Southgroup and "the Company" are separate entities. (*See* Am. Answer ¶ 21A; *see also* Am. Compl. ¶ 45.) Defendants also allege that the MIPA, though signed by Brown and Secor, never became operative. (Am. Answer ¶ 21D.) According to Defendants, the MIPA would have become effective only in the event of a default under the terms of a separate memorandum of understanding between Brown and Secor. (Am. Countercls. ¶¶ 19, 24, 31(b).) Defendants and Brown agree that no memorandum of understanding was ever signed. (*See* Am. Countercls. ¶¶ 32, 34; Reply ¶¶ 32, 34.)

14. After receiving these documents from Secor, Brown made two further fund transfers. He first wired $100,000 to LW Land on July 5, 2013 for Black Bear Falls. (*See* Am. Compl. ¶ 22(a).) Then, on July 23, 2013, Brown wired an additional $300,000 to LW Land for marketing and clean-up costs for Nature's Courtyard. (*See* Am. Compl. ¶ 22(b).)

15. A partial sale of Nature's Courtyard took place on August 17, 2013 (as LW Land's brochure stated) but returned no more than $600,000 (less than LW Land forecast). (*See* Am. Compl. ¶¶ 20(b), 23–24.) Brown alleges that Secor falsely

represented that only marketing costs were recovered from the sale. (Am. Compl. ¶¶ 23–25.) Brown further alleges that he did not receive any proceeds, either directly or through his alleged membership interest in Southgroup. (Am. Compl. ¶ 35.)

16.     After the Nature's Courtyard sale, Brown inquired about the properties throughout the remainder of 2013 and 2014 but received little information. (*See* Am. Compl. ¶¶ 26, 30, 32.) It does not appear that Black Bear Falls was ever sold, but on January 14, 2015, the Ashe County property sold for $1,670,000. (*See* Am. Compl. ¶ 33.) Brown first learned of the sale some 11 months after it took place and, again, received no proceeds. (*See* Am. Compl. ¶¶ 32–33, 41.) He alleges that Secor transferred more than $1 million in proceeds from the sale to Secor Group. (Am. Compl. ¶ 41.)

17.     Through counsel, Brown requested access to Southgroup's books in December 2015 and January 2016. (*See* Am. Compl. ¶ 38.) The request was refused on the ground that Brown does not hold any membership interest in Southgroup. (*See* Am. Compl. ¶¶ 39–40.) According to Brown, Defendants' counsel also "indicated that all the proceeds from the sales are gone." (Am. Compl. ¶ 36.)

## B.  Procedural History

18.     Brown filed his original complaint on April 15, 2016, alleging fraud and seeking to enforce his rights as an alleged owner of Southgroup. After filing their answer, Defendants filed an initial motion for judgment on the pleadings on November 23, 2016, and Brown moved to amend his complaint on January 6, 2017. After a hearing on both motions, the Court granted in part the motion to amend and

denied the Rule 12(c) motion as moot, without prejudice to Defendants' ability to challenge the amended complaint through a subsequent Rule 12 motion. (Order on Pl.'s Mot. to Am. Compl. and Defs.' Mot. for J. on the Pleads. ¶ 10(a)–(c).)

19. The amended complaint, filed March 2, 2017, asserts 12 causes of action: breach of contract (as to all Defendants except Rosso Group); a demand for documents and an accounting of Southgroup; breach of fiduciary duty and constructive fraud (as to Secor); declaratory judgment regarding the membership of Southgroup; a claim for distributions from Southgroup; unjust enrichment; fraud; failure to register a security; securities fraud; constructive trust; unfair or deceptive trade practices; and conspiracy. Defendants answered the amended complaint and filed counterclaims on March 16, 2017, with Brown's reply following on March 24, 2017.

20. The Court held a BCR 10.9 teleconference on March 17, 2017, during which the parties addressed discovery disputes relating to Brown's requests for, among other things, banking records, tax returns, agreements used by Defendants in transactions with other investors, and the identification of other investors. The Court authorized Brown to file a motion to compel as to the latter three categories of information but ordered the parties to continue conferring regarding Defendants' banking records.

21. On April 3, 2017, Defendants jointly filed their renewed Rule 12(c) Motion, seeking judgment on the pleadings as to all claims except for breach of contract. Rosso and Secor Group additionally filed the Rule 12(b)(6) Motion as to the breach of contract claim. Brown also filed his first motion to compel, and Defendants cross-

moved for a protective order. These motions are fully briefed and were addressed at a hearing on May 3, 2017.

22. During the May 3 hearing, Brown's counsel reported that the parties had reached an impasse regarding Defendants' banking records and requested authorization to file a second motion to compel. The Court requested a proposed briefing schedule from the parties, which was submitted and adopted on June 6, 2017. The second motion to compel and Defendants' second cross-motion for protective order were fully briefed on July 17, 2017. The Court elects to decide these later motions without another hearing. *See* BCR 7.4.

## II.
## THE RULE 12 MOTIONS

23. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

24. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98,

176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

25. "The standard of review for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6)." *Akzo Nobel Coatings Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *19 (N.C. Super. Ct. Nov. 3, 2011). "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).

26. The Court may consider documents "attached to and incorporated within" the pleadings without converting a Rule 12(b)(6) or Rule 12(c) motion into one for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007).

## A. Claims Against Rosso Group

27. At the outset, the Court grants judgment on the pleadings as to all claims against Rosso Group. Defendants correctly observe that Brown "does not reference at any time in the Complaint any actions by Rosso Group." (Defs.' Br. in Supp. of Mot. for Partial J. on the Pleads. 14 ["Defs.' Nov. 23 Br."].) Brown's responsive briefing is conspicuously silent on the point. There is no apparent basis for Rosso Group to be a defendant in this action, and the Court therefore dismisses the claims asserted against it with prejudice.

## B. Breach of Contract

28. Brown alleges that he upheld his end of an oral agreement to finance Secor's real estate investments but that Defendants (except Rosso Group) breached the agreement by failing to pay him any proceeds from the transactions. (*See* Am. Compl. ¶¶ 49–50.) In their Rule 12(b)(6) Motion, Rosso and Secor Group argue that the amended complaint does not allege they were parties to that agreement. (*See* Br. in Supp. of Mot. to Dismiss Pl.'s First Claim for Relief 2.)

29. Brown first contends that the motion is procedurally improper because, in allowing Brown to amend his complaint, the Court concluded that the claim for breach of contract was not futile. (*See* Pl.'s Br. in Opp. to Mot. to Dismiss Pl.'s First Claim for Relief 2.) Not so. The Court held that Brown's "allegation of breach does not, on this record, appear to be incapable of surviving a motion to dismiss" but expressly granted the motion to amend "without prejudice to Defendants' right to challenge the amended complaint through a Rule 12 motion." (Order on Pl.'s Mot. to Am. Compl. and Defs.' Mot. for J. on the Pleads. ¶¶ 5, 10(c).) The Rule 12(b)(6) Motion is properly before the Court. *See Simply the Best Movers, LLC v. Marrins' Moving Sys., Ltd.*, 2016 NCBC LEXIS 28, at \*5–6 (N.C. Super. Ct. Apr. 6, 2016) (noting that "futility standard under Rule 15 is essentially the same standard used in reviewing a motion to dismiss under Rule 12(b)(6)" but courts have "liberal discretion to find that an amendment lacks futility").

30. Indeed, the Rule 12(b)(6) Motion has merit. A claim for breach of contract requires the "existence of a valid contract." *Carcano v. JBSS, LLC*, 200 N.C. App.

162, 168, 684 S.E.2d 41, 47 (2009) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)). When a defendant is "not a party to the contract," then "as a matter of law he cannot be held liable for any breach that may have occurred." *Canady v. Mann*, 107 N.C. App. 252, 259, 419 S.E.2d 597, 601 (1992).

31. At no point does the amended complaint name Rosso or Secor Group as parties to the oral agreement. It alleges that, "[a]fter much negotiation, [Brown] and Secor agreed upon a business relationship in which [Brown] would finance certain real estate investments to be held in" Southgroup, and "[Brown] and Secor" would split any profits after a return of Brown's principal investment plus interest. (Am. Compl. ¶ 11.) The only other description of the agreement is in paragraph 47, which refers to the agreement "as aforesaid"—a clear reference to paragraph 11. (Am. Compl. ¶ 47.) Neither paragraph mentions Rosso or Secor Group; there is no allegation that either made any promises or received any consideration; and there is no allegation that Secor acted on behalf of one or both. In fact, Brown alleges that he first met Rosso *after* entering into the oral agreement. (*See* Am. Compl. ¶ 16.)

32. The Court has considered Brown's arguments and finds them unpersuasive. Rosso's participation in the real estate transactions as broker does not make him a contractual party. (*See* Am. Compl. ¶ 10.) Nor can Brown contend that Secor Group is a party to the agreement based on Defendants' allegation, in their amended counterclaims, that Brown orally "promised to provide the funding for all of Secor Group's and Southgroup's land acquisitions." (Am. Countercls. ¶ 18.) The allegation

appears nowhere in the complaint, and Brown specifically denies making the funding promise. (*See* Am. Compl. ¶ 48; Reply ¶ 18.)

33. The Court therefore grants the Rule 12(b)(6) Motion. The claim for breach of contract, to the extent asserted against Rosso and Secor Group, is dismissed with prejudice.

## C. Declaratory Judgment

34. The declaratory judgment claim concerns Brown's rights and interests with respect to Southgroup. Specifically, Brown alleges that he holds a 100% membership interest in Southgroup and all the rights associated with that interest. (*See* Am. Compl. ¶¶ 65–66.) Defendants move for judgment on the pleadings that Brown is not a member of Southgroup. (*See* Defs.' Nov. 23 Br. 1; Defs.' Br. in Supp. of Renewed Mot. for Partial J. on the Pleads. 2 ["Defs.' Apr. 3 Br."].)

35. This dispute concerns the meaning of terms in the MIPA and therefore presents a question of contract interpretation. "When the language of a written contract is plain and unambiguous, the contract must be interpreted as written and the parties are bound by its terms." *Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co.*, 163 N.C. App. 748, 752, 594 S.E.2d 425, 429 (2004). Whether a contractual term is ambiguous is a question of law. *See, e.g., Wachovia Bank Nat'l Ass'n v. Superior Constr. Corp.*, 213 N.C. App. 341, 349, 718 S.E.2d 160, 165 (2011).

36. On its face, the MIPA is an agreement between Brown ("the Buyer"), Southgroup ("the Seller"), and Secor as manager of Southgroup. (MIPA p.1.) In the recitals, Secor represents that he "owns all of the outstanding equity membership

interest in [Southgroup]," and Southgroup represents that it owns a 100% membership interest in an unnamed entity identified as "the Company." (MIPA p.1; *see also* MIPA ¶¶ 4(a), 5(a).) Southgroup "transfers" to Brown "all of [Southgroup's] right, title and interest in and to the Membership Interest" in the Company for the sum of ten dollars. (MIPA p.1, ¶¶ 1, 2.)

37. There is no plausible way to construe this language to mean that Brown obtained a membership interest in Southgroup, as he contends. Brown's interpretation—that Southgroup is both "the Seller" and "the Company"—is a nonstarter. The MIPA expressly treats "Seller" and "Company" as different entities throughout. It defines the terms differently (MIPA p.1) and imposes distinct obligations on each (*see* MIPA ¶¶ 4, 6). Indeed, in paragraph 6, "the Company" makes representations and warranties *to* Southgroup, which would make little sense if they were one and the same. (*See* MIPA ¶ 6.)

38. The MIPA further states that Secor owns Southgroup and Southgroup owns the Company. (*See* MIPA p.1.) Brown's interpretation would render these statements incoherent: first, that Southgroup claims to own a 100% membership interest in itself; and second, that Secor and Southgroup each claim to own an undivided interest in the same piece of personal property. Neither would make sense. *See* N.C. Gen. Stat. § 57D-2-01(a) ("An LLC is an entity distinct from its interest owners."); N.C. Gen. Stat. § 57D-5-01 ("An ownership interest [in an LLC] is personal property.").

39. This is not to say that the MIPA is a model of clarity—it isn't. The "Company" is not named, and Defendants do not name the entity in their briefs. Yet the MIPA's plain language makes clear that, whatever else "the Company" could be, it is not Southgroup. Brown's insistence that the MIPA must be construed against Secor as the drafter is therefore misplaced. (*See* Pl.'s Br. in Opp'n to Defs.' Mot. for Partial J. on the Pleads.3 ["Pl.'s Dec. 16 Br."].) This rule of construction applies only in a contest between reasonable alternatives, and Brown's interpretation is not reasonable. *See* 11 Williston on Contracts § 32:12 (4th ed.) ("[I]t is only when, consistent with the general rules of contract interpretation, the meaning proposed by the nondrafter . . . is reasonable. . . that the rule of *contra proferentem* is properly invoked." (collecting cases)).

40. As a matter of law, Brown does not hold a membership interest in Southgroup, and he is not entitled to a declaration to that effect. The Court therefore grants judgment on the pleadings as to the claim for declaratory judgment. The Court need not address Defendants' alternative argument that the MIPA never became operative. (*See* Defs.' Nov. 23 Br. 4–5.)

### D. Demand for Documents and Accounting and Claim for Distributions

41. The resolution of Brown's declaratory judgment claim also requires dismissal of his claims demanding documents, an accounting, and distributions from Southgroup. (*See* Am. Compl. ¶¶ 52–55, 67–68.) Brown may not assert claims based on a membership interest in Southgroup, which he does not possess. *See* N.C. Gen. Stat. § 57D-1-03(9) (only "an interest owner in respect of the interest owner's

ownership interest" entitled to distribution); N.C. Gen. Stat. § 57D-3-04(a) to (f) (limiting information rights to "member[s], manager[s], or other company official[s]"). Accordingly, the Court grants the Rule 12(c) Motion as to these claims.

## E.  Breach of Fiduciary Duty and Constructive Fraud

42.  Brown's third claim for relief is a combined claim for breach of fiduciary duty and constructive fraud.  (*See* Am. Compl. ¶¶ 56–62.)  Brown asserts this claim against Secor only, alleging that Secor, as manager of Southgroup, owed fiduciary duties to Brown and to Southgroup.  (*See* Am. Compl. ¶¶ 57–58.)  The amended complaint alleges that Secor breached these duties by engaging in self-dealing and diverting Southgroup's distributions from Brown to himself.  (*See* Am. Compl. ¶¶ 60–61.)

43.  Although Brown has pleaded them together, breach of fiduciary duty and constructive fraud are distinct causes of action.  *See White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004).  An essential element of each is the existence of a fiduciary relationship.  *See Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (fiduciary duty); *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012) (constructive fraud).

44.  As pleaded, Brown has not sufficiently alleged the existence of a fiduciary relationship with Secor.  Brown's claims are based entirely on duties allegedly owed by Secor as manager of Southgroup.  (*See* Am. Compl. ¶¶ 57–61.)  Having concluded that Brown has no membership interest in Southgroup, the Court further concludes that he may not assert a fiduciary relationship based on that non-existent

membership interest, whether individually or derivatively. *See* N.C. Gen Stat. § 57D-8-01(a) (plaintiff to derivative suit must, among other things, be a member of the LLC); *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 473–74, 675 S.E.2d 133, 137 (2009) (manager of LLC does not owe a fiduciary duty to members solely on basis of role as manager).

45. In his briefing, Brown asserts a second, independent theory: that Secor owed him a fiduciary duty as a seller of securities. (*See* Pl.'s Dec. 16 Br. 14; Pl.'s Br. in Opp'n to Defs.' Renewed Mot. for J. on the Pleads. 8 ["Apr. 14 Br."].) This argument omits any citation to the original or amended complaints, and the Court finds no allegations that serve to provide adequate notice to Secor of a claim on this basis. The requirement to liberally construe the complaint is not an invitation to rewrite it.

46. Accordingly, the Court grants the Rule 12(c) Motion as to the claim for breach of fiduciary duty and constructive fraud.

### F. Unjust Enrichment

47. Brown's claim for unjust enrichment is based on "his payments to or for the benefit of" Southgroup. (Am. Compl. ¶ 70.) Defendants argue this claim necessarily fails because Brown alleges "that the MIPA was an effective contract" and the existence of an express agreement precludes an unjust enrichment claim. (Defs.' Nov. 23 Br. 8.)

48. Defendants' argument is misplaced. A plaintiff is entitled to assert an unjust enrichment claim in the alternative. This is especially true here where the parties contest the scope and effect of the MIPA (as well as the oral agreement) and

the Court has concluded that the MIPA does not transfer to Brown a membership interest in Southgroup. The Court denies the Rule 12(c) Motion as to the claim for unjust enrichment. *See, e.g.*, *Krawiec v. Manly*, 2016 NCBC LEXIS 7, at \*31 (N.C. Super. Ct. Jan. 22, 2016).

## G. Fraud

49. Brown asserts his claim for fraud against all Defendants. To state a claim, Brown must allege "(a) a false representation or concealment of a material past or existing fact; (b) that was reasonably calculated to deceive; (c) that was made with an intent to deceive; (d) that did in fact deceive, *i.e.*, was relied upon and (e) resulted in damage to the injured party." *Shamoon v. Turkow*, 2011 NCBC LEXIS 47, at \*10 (N.C. Super. Ct. Dec. 6, 2011) (citing *State Props., LLC v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002)).

50. Defendants raise two arguments. First, they object to the allegation that "Defendants' provision of the MIPA . . . to secure additional funds from Brown was a fraud in the inducement" (Am. Compl. ¶ 76), contending that the allegation is conclusory. (*See* Defs.' Nov. 23 Br. 10.) Second, they argue that Brown has not sufficiently alleged reasonable reliance on the provision of the MIPA (because he knew its terms), on the alleged concealment of the relationship between Secor and Rosso (because he was aware of it), or on the alleged concealment of the debt on Black Bear Falls (because he did not investigate it). (*See* Defs.' Nov. 23 Br. 10–12.)

51. The Court concludes that Brown has alleged facts sufficient to state a claim for fraud. Defendants' arguments, even if correct, overlook numerous allegations in the amended complaint.

52. For example, the amended complaint alleges that Secor represented to Brown that he would receive proceeds from the sale of properties acquired by Southgroup and that Secor did not intend to abide by that agreement at the time he made it. (Am. Compl. ¶¶ 10–12, 20(b), 24, 78.) The amended complaint further alleges that (1) Brown relied on the representation by providing more than $2 million in funds (Am. Compl. ¶¶ 18, 22, 35, 50); (2) two properties were sold for substantial sums (Am. Compl. ¶¶ 22, 35, 50); (3) Secor Group received more than $1 million from the sales (Am. Compl. ¶¶ 41, 43); and (4) Brown has not received any proceeds (Am. Compl. ¶¶ 23–25, 32–33). These allegations are sufficient to survive a Rule 12 motion. *See, e.g.*, *Priest v. Coch*, 2013 NCBC LEXIS 6, at *19–20 (N.C. Super. Ct. Jan. 25, 2013) (denying Rule 12(b)(6) motion as to fraud claim where it was alleged that defendants "did not intend to pay" at time of contracting).

53. The amended complaint further alleges affirmative misrepresentations that were designed to induce, and did induce, Brown to make additional fund transfers. For example, (1) Secor sent Brown a "Marketing Summary" from LW Land, which forecast a sale of as much as $1.3 million (Am. Compl. ¶ 20(b)); (2) Secor and Rosso are partners in LW Land (Am. Compl. ¶¶ 7, 16; *see also* Am. Compl. ¶ 37); (3) Brown provided $400,000 in funds to LW Land based on these representations (Am. Compl. ¶ 22); (4) the Nature's Courtyard property sold for much less than forecast (*see* Am.

Compl. ¶¶ 24–25); and (5) Brown has not received proceeds from the sales (Am. Compl. ¶ 35). These allegations, although not stated with crystal clarity, are "minimally sufficient" to state a claim. *Holcomb v. Landquest Ltd. Liab. Co.*, 2017 NCBC LEXIS 36, at \*21 (N.C. Super. Ct. Apr. 21, 2017); *see also Shamoon*, 2011 NCBC LEXIS 47, at \*10–12 (finding question of material fact as to whether defendant knew representations were false).

54.    For these reasons, the Court denies the Rule 12(c) Motion as to the claim for fraud (except as to Rosso Group, as noted above). For the same reason, the Court also denies the motion as to the conspiracy claim, which Defendants seek to dismiss solely on the ground that the underlying fraud claim should be dismissed. (Defs.' Apr. 3 Br. 4.) Because the fraud claim survives, so too does the claim for conspiracy. *See Nye v. Oates*, 96 N.C. App. 343, 346–47, 385 S.E.2d 529, 531 (1989) (holding that precedent "permits one defrauded to recover from anyone who facilitated the fraud by agreeing for it to be accomplished").

## H. Securities Fraud

55.    Brown contends that the alleged fraud also constitutes securities fraud under the North Carolina Securities Act. *See* N.C. Gen. Stat. § 78A-8. Defendants argue that Brown has not alleged the existence of any securities.

56.    The North Carolina Securities Act defines the term "security" broadly. As relevant, a security may include an "investment contract" or a "certificate of interest or participation in any profit-sharing agreement." N.C. Gen. Stat. § 78A-2(11); *see also Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC,*

2012 NCBC LEXIS 52, at *25 (N.C. Super. Ct. Oct. 3, 2012). In interpreting this language, North Carolina courts are guided by federal law, which applies a functional approach. *See* N.C. Gen. Stat. § 78A-64 (noting statutory purpose to "coordinate the interpretation . . . of this Chapter with the related federal regulation").

57. Brown first alleges that the oral agreement between Brown and Secor is an "investment contract" as defined in N.C. Gen. Stat. § 78A-2(11). According to the amended complaint, under this agreement, Brown "invested his money, in a common enterprise, and was led to expect profits solely from the efforts of others." (Am. Compl. ¶ 82.) This allegation is sufficient to survive a Rule 12 motion. *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946) (finding a security based on the "investment of money in a common enterprise with profits to come solely from the efforts of others"); *see also NNN Durham Office Portfolio 1, LLC v. Grubb & Ellis Co.*, 2016 NCBC LEXIS 95, at *44 (N.C. Super. Ct. Dec. 5, 2016).

58. Brown also alleges that the membership interest transferred via the MIPA—whether for Southgroup or some other entity—"may also constitute a security under North Carolina law." (Am. Compl. ¶ 83.) Determining whether an interest in an LLC is a security requires "'case-by-case analysis into the 'economic realities' of the underlying transaction." *U.S. v. Leonard*, 529 F.3d 83, 89 (2d Cir. 2008) ((citations omitted)); *see also Robinson v. Glynn*, 349 F.3d 166, 170 (4th Cir. 2003) (looking to "economic reality" of investment scheme); *see also NNN Durham Office Portfolio 1*, 2016 NCBC LEXIS 95, at *50. Liberally construing the amended complaint, Brown purported to purchase an interest in a manager-managed LLC, the

fortunes of which would be determined by the abilities of its manager, Secor. (*See* MIPA p.1; *see also* Am. Compl. ¶ 21(b),(d).) For purposes of this motion, the amended complaint sufficiently alleges the existence of a security.

59. Defendants also reiterate their arguments that the amended complaint does not sufficiently allege fraud. (*See* Defs.' Apr. 3 Br. 3.) For the reasons stated above, the Court disagrees.

60. Accordingly, the Court denies the Rule 12(c) Motion as to the claim for securities fraud (other than as to Rosso Group).

## I. Failure to Register a Security

61. Brown asserts that Defendants violated N.C. Gen. Stat. § 78A-24 by failing to register the oral agreement and the MIPA as securities. (*See* Am. Compl. ¶¶ 81–85.) Defendants contend this claim is barred by the statute of limitations, which prohibits claims brought "more than two years after the sale or contract of sale" of the security at issue. N.C. Gen. Stat. § 78A-56(f).

62. A court may grant judgment on the pleadings in favor of a defendant who asserts the statute of limitations as a defense "when, and only when, all the facts necessary to establish the limitation are alleged or admitted." *Flexolite Electrical v. Gilliam*, 55 N.C. App. 86, 87–88, 284 S.E.2d 523, 524 (1981). In other words, "on a motion for judgment on the pleadings, dismissal is proper only if it appears on the face of the complaint that the plaintiff filed outside the limitations period." *Benson v. Barefoot*, 148 N.C. App. 394, 396–97, 559 S.E.2d 244, 246 (2002).

63.     Here, as to both the oral agreement and the MIPA, it is clear from the face of the amended complaint that Brown filed his claim outside the two-year limitations period. The amended complaint alleges that Brown and Secor entered into the oral agreement in May 2013, and it alleges that Secor sent the MIPA to Brown in July 2013. (*See* Am. Compl. ¶¶ 11–12, 20(c).) Both dates are more than two years prior to the filing of the original complaint on April 15, 2016, which is the earliest filing date Brown could conceivably rely on.

64.     Brown's briefs are silent regarding the oral agreement. (*See generally* Pl.'s Reply Br. in Supp. of Mot. to Amend Compl. 5–7; Pl.'s Apr. 14 Br. 9.) Accordingly, he has offered no basis to avoid the statute of limitations as to that agreement.

65.     As to the MIPA, Brown does not identify any supporting allegations in the amended complaint. Instead, he argues that Defendants created a factual dispute as to the beginning of the limitations period by asserting in their amended counterclaims that the MIPA did not become effective in July 2013. (*See* Pl.'s Apr. 14 Br. 9.) The Court disagrees. Defendants' position is that the MIPA was intended to become effective only in the event of a default under the terms of a separate memorandum of understanding, which Brown admits he and Secor never executed. (*See* Am. Countercls. ¶¶ 31(b), 32, 34; Reply ¶¶ 31, 32, 34.) Accordingly, the claim is either time-barred (under the facts alleged in the complaint), or the MIPA resulted in no sale and was not subject to a registration requirement (under the facts alleged in the counterclaims).

66. The Court grants the Rule 12(c) Motion as to the claim for failure to register a security. The Court does not address Defendants' alternative argument that the oral agreement and the MIPA were exempt from registration under N.C. Gen. Stat. § 78A-17(5) and (9).

## J. Unfair or Deceptive Trade Practices

67. Defendants invoke the well-settled rule that a mere breach of contract does not constitute an unfair or deceptive trade practice under N.C. Gen. Stat. § 75-1.1. *See Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). Fraud, however, may constitute a section 75-1.1 violation. *See, e.g.*, *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975) (fraud a deceptive practice); *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *14 (N.C. Super. Ct. Jan. 5, 2016) (aggravating circumstances include "fraudulent inducements"). Having concluded that Brown's fraud claim survives Rule 12, the Court also concludes that Brown has, at this stage, stated a claim for unfair or deceptive trade practices.

## K. Constructive Trust

68. A constructive trust is a remedy, not a cause of action. *See Weatherford v. Keenan*, 128 N.C. App. 178, 179, 493 S.E.2d 812, 813 (1997). Accordingly, for purposes of clarity, the Court grants the Rule 12(c) Motion to the extent it seeks dismissal of the purported cause of action for constructive trust. The Court renders this decision without prejudice to Brown's ability to pursue the equitable remedy of a constructive trust based on his remaining legal claims, including his claim for fraud.

*See Roper v. Edwards*, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988) (describing constructive trust as an equitable remedy "to prevent the unjust enrichment of the holder of . . . an interest in[] property which such holder acquired through fraud").

### III.
### THE DISCOVERY MOTIONS

69.     "[O]rders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion." *Wachovia Bank v. Clean River Corp.*, 178 N.C. App. 528, 531, 631 S.E.2d 879, 882 (2006) (quoting *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601, 617 S.E.2d 40, 45 (2005)).  Here, Brown's Motions to Compel request production of four categories of information: (1) Defendants' initial and amended tax returns for 2012 to 2015; (2) Defendants' banking records for 2012 to present; (3) the names of third-party investors; and (4) documents used by Defendants in transactions with other investors.

### A. <u>Legal Standard</u>

70.     In general, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. R. Civ. Pro.  26(b)(1).  "The test of relevancy under Rule 26 is not, of course, the stringent test required at trial.  The rule is designed to allow discovery of any information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Willis v. Duke Power Co.*, 291 N.C. 19, 32, 229 S.E.2d 191, 200 (1976) (quoting N.C. R. Civ. Pro. 26(b)); *accord Wachovia Capital Partners, LLC v. Frank Harvey Inv. Family L.P.*, 2007 NCBC LEXIS 7, at *48 (N.C. Super. Ct. Mar. 5, 2007).

71.     Nevertheless, a party seeking discovery is "not entitled to a fishing expedition to locate it." *Dworsky v. Travelers Ins. Co.*, 49 N.C. App. 446, 448, 271 S.E.2d 522, 524 (1980).  A court may enter a discretionary protective order "even as to relevant material" after balancing "[o]ne party's need for information . . . against the likelihood of an undue burden [being] imposed upon the other." *Willis*, 291 N.C. at 34, 229 S.E.2d at 200.

## B. Tax Returns

72.     Brown requests production of tax returns for each Defendant from 2012 to 2015.  Defendants produced redacted versions of Southgroup's initial filing for 2014 and Secor Group's amended returns for 2013 and 2014.  They have objected to providing any other returns and to removing the redactions.

73.     The Court agrees that Defendants' 2012 tax returns and Rosso Group's returns for any year are not relevant.  The events giving rise to this action first began in 2013, and the relevant real estate transactions occurred in late 2013 and early 2015. (*See* Am. Compl. ¶¶ 11, 12, 23, 33.)  As to Rosso Group, the Court has dismissed all claims against the company, which apparently was not even formed until 2015. (*See* Am. Countercls. ¶ 5.)  Brown is not entitled to 2012 tax returns for any Defendant or for Rosso Group's tax returns for any year.

74.     Defendants' other relevance objections are not supported.  Brown contends that he invested $2.2 million to be used in Southgroup's land acquisitions, expecting to receive a return of his principal plus half the profits.  He further contends that Secor and Rosso (through LW Land) concealed transactions disposing of the real

estate in 2013 and 2015 and then diverted the proceeds to Secor Group, without paying any proceeds to Brown. (*See, e.g.*, Am. Compl. ¶¶ 7, 22, 36, 41.) Whether and how Defendants accounted for these transactions in their 2013 to 2015 tax returns is plainly relevant. *See Transatlantic Healthcare, LLC v. Alpha Constr. of the Triad, Inc.*, 2017 NCBC LEXIS 21, at *38–39 (N.C. Super. Ct. Mar. 9, 2017) (granting motion to compel tax records). Any change in the reporting of these transactions between initial and amended filings would be equally relevant.

75.     There remains an issue regarding whether Defendants may redact the tax returns by removing information they deem irrelevant. The Court is not aware of any North Carolina precedent addressing the propriety of unilateral redactions for relevance, but federal courts frequently hold that "relevance-based redactions are disfavored." *Wellin v. Wellin*, No. 2:13-cv-1831-DCN, 2015 U.S. Dist. LEXIS 132485, at *18 (D.S.C. Sept. 30, 2015) (collecting cases).

76.     The Court agrees with the reasoning of these decisions. "It is a rare document that contains only relevant information." *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451–52 (D. Minn. 2011). A producing party should not "decide unilaterally what context is necessary . . . and what might be useless to the case." *Evon v. Law Offices of Sidney Mickell*, No. S–09–0760, 2010 U.S. Dist. LEXIS 20666, at *5 n. 1 (E.D. Cal. Feb. 3, 2010); *see also Scranton Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 190 F.Supp.3d 419, 436–38 (M.D. Pa. 2016); *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 693 (N.D. Ga. 2009). This is especially so when there

is a protective order in place to shield any sensitive information. *See Evon*, 2010 U.S. Dist. LEXIS 20666, at \*5 n. 1.

77.   The discretion to make unilateral redactions would incentivize parties to hide "as much as they dare." *Burris v. Versa Prods.*, 2013 U.S. Dist. LEXIS 21851, at \*10 (D. Minn. Feb. 19, 2013).  That, in turn, would give rise to "suspicion that relevant material harmful to the producing party has been obscured," along with "tend[ing] to make documents confusing or difficult to use."  *Bonnell v. Carnival Corp*, CASE NO. 13-22265-CIV-WILLIAMS/GOODMAN, 2014 U.S. Dist. LEXIS 22459, at \*8 (S.D. Fla. 2014) (quoting *In re Medeva Securities Litigation*, Master File No. 93-4376-Kn(AJWx), 1995 U.S. Dist. LEXIS 21895, at \*8 (C.D. Cal. 1995)).  Indeed, there is "no better way to ensure that a motion to compel will be filed than to unilaterally black out large portions of documents as the human mind is naturally curious."  *David v. Alphin*, No. 3:07cv11, 2010 U.S. Dist. LEXIS 144275, at \*23 (W.D.N.C. Mar. 30, 2010).

78.   The suspicions are heightened in this case where Brown contends Defendants stole more than $2 million from him, concealed the transactions, and are now hiding the wrongdoing behind large-scale redactions of relevant documents. Matters are not helped by Defendants' narrow understanding of the standard for relevance. (*See* Defs.' Br. in Supp. Mot. for Prot. Order and in Opp'n to Pl.'s Mot. to Compel Discovery 3–4 ["Defs.' Tax Br."]; Defs.' Br. in Supp. Mot. for Prot. Order and in Opp'n to Pl.'s Mot. to Compel Discovery (Banking Records) 1–3 ["Defs.' Banking Br."].)  Taking into account that the parties have agreed to a Consent Protective

Order, the Court is persuaded that Defendants' unilateral redactions for relevance are not appropriate.

79. For all these reasons, Defendants, except Rosso Group, must produce tax returns for 2013 through 2015 within their possession, custody, or control. These include Southgroup's 2013 return, the original 2013 and 2014 returns for Secor Group, the 2015 returns for Secor Group and Southgroup, and the returns for Secor and Rosso for each year. Defendants shall not make any substantive redactions but may redact confidential identifying information, such as social security numbers, taxpayer identification numbers, and employer identification numbers. Defendants shall also produce unredacted versions of the tax returns produced to date.

80. To the extent any returns do not exist or have not yet been filed, Defendants shall certify to that effect and produce copies of the relevant extensions. (Defs.' Tax Br. 6 (stating that 2015 returns "have not been filed because they have received extensions of time").) To the extent Defendants do not possess the documents but have "the legal right to obtain the documents on demand," they shall do so. *Lowd v. Reynolds*, 205 N.C. App. 208, 214, 695 S.E.2d 479, 484 (2010) (quoting *Pugh v. Pugh*, 113 N.C. App. 375, 380–81, 438 S.E.2d 214, 218 (1994)). The Court rejects Defendants' argument that they are not required to obtain tax returns from the Internal Revenue Service under 26 U.S.C. § 6103. *See United States v. All Assets Held at Bank Julius Baer & Co.*, 142 F.Supp.3d 37, 45–46 (D.D.C 2015) (holding that section 6103 "only regulates disclosure of tax returns by the IRS, not private litigants," and "the weight of case authority similarly holds that section 6103 did not

enact a limitation on civil discovery" (collecting cases)); *see also In re Pedestrian Walkway*, 173 N.C. App. 237, 242–43, 618 S.E.2d 819, 823 (2005) (noting order requiring party to obtain tax returns from IRS and compelling their production).

## C. Information Related to Other Deals

81. Brown requests two types of information related to other deals made by Defendants. First, he seeks the production of all Membership Interest Purchase Agreements entered into between Defendants and other investors. Second, he requests that Defendants identify, in interrogatory responses, their other investors, including both investors in the real estate at issue in this litigation and prior investors in similar transactions.

82. The Court denies the motion to compel as to any Membership Interest Purchase Agreements. The Court has held that Brown is not a member of Southgroup under the terms of the MIPA he and Secor signed. In the absence of claims based on that membership, the production of similar agreements does not appear reasonably likely to lead to the discovery of admissible evidence.

83. The identification of Defendants' other investors, however, could be relevant. Defendants have alleged, for example, that Brown "promised to provide the funding for all of Secor Group's and Southgroup's land acquisitions"—that is, Brown was the exclusive source of funding. (Am. Countercls. ¶ 18.) They further allege that Brown breached this promise by failing to fund a development called Sanctuary Cove. (Am. Countercls. ¶ 67.) If Defendants had other investors during this time, it could

be relevant to the issue of exclusivity and perhaps to mitigation of damages. (*See* Am. Countercls. ¶ 18; Reply 10.)

84. Defendants state that they have no names to report because there were no third-party investors "involved in Black Bear Falls, New River, or Nature's Courtyard." (Defs.' Tax Br. 12.) It is unclear, however, whether Defendants were involved in deals with other investors for other properties at this time. If they were, that would be relevant, at a minimum, to the alleged exclusive funding agreement with Brown. Accordingly, Defendants shall supplement their interrogatory responses to identify any investors in transactions after May 2013—that is, during the period of the alleged funding agreement with Brown. If there are no such investors, they shall supplement their responses to say so.

85. Brown is not entitled, however, to discovery regarding all investors Secor and Rosso have ever had. This litigation concerns a limited time period and specific agreements and transactions. The Court is not persuaded that Defendants' investor relationships prior to the agreement between Brown and Secor have any bearing on this litigation.

86. The Court acknowledges Defendants' concern that Brown will harass the other investors and "will disclose the information." (Defs.' Tax Br. 8; *see also* Defs.' Tax Br. 1, 7, 12.) These "concerns are not a proper reason to fail to produce relevant information." *Balfour Beatty Rail, Inc. v. Vaccarello*, 3:06-cv-551-J-20MCR, 2007 U.S. Dist. LEXIS 3581 (M.D. Fla., Jan. 18, 2007) (citing Fed. R. Civ. Pro. 26(c)). Moreover, the parties' Consent Protective Order states that any information produced

during discovery "shall be used solely and exclusively for the purposes of prosecuting or defending this Litigation, and shall not be used by a Party for any other purposes." (Consent Protective Order ¶ 2.)

### D. Banking Records

87. Brown seeks all banking records for each Defendant—including the personal records of Secor and Rosso—from 2012 to present. Defendants produced records for Secor Group from January 2013 to January 2017, but the records are heavily redacted. Defendants refused to produce any other records, including the records of "ACRE," which is simply another name for Secor Group.

88. This dispute is perplexing. It is clear from the record—including the initial Business Court Rule 10.9 proceedings and the subsequent motion to compel—that the real issue concerns Secor Group's banking records. There is no dispute that funds and expenses for the real estate transactions flowed through Secor Group, in part because Southgroup does not have its own bank account. Pre-motion correspondence between the parties reflects this: Defendants agreed to produce some banking records for Secor Group, and Brown's counsel expressed hope that these records would provide most of the needed information. The parties' current all-or-nothing positions are untenable.

89. The Court concludes, first, that bank records from 2012 and bank records for Rosso Group are not relevant. Brown maintains that records from 2012 are relevant to assessing damages and to assessing Defendants' "business model." (Br. in Supp. of Pl.'s Mot. to Compel Discovery (Banking Records) 11–12 ["Pl.'s Banking

Br."].)  The connection is tenuous and unconvincing, and the Court denies the motion to compel as to these records.

90.  Second, the Court reiterates that relevance-based redactions are disfavored. *See Wellin*, 2015 U.S. Dist. LEXIS 132485, at *18.  Even if producing parties were entitled to unilaterally determine what context is important and what is not, this would not be such a circumstance.  Secor Group's bank accounts may reveal expenses associated with the relevant properties, the disposition of proceeds from their sales, and transactions with other investors during the period of the alleged funding promise.  Moreover, Secor Group's account was apparently used for the transactions of Southgroup and ACRE, adding to the need for transparency.  Accordingly, Defendants shall provide unredacted copies of the information already produced as to Secor Group.

91.  Third, Defendants' basis for withholding the records of ACRE on relevance grounds is unpersuasive.  ACRE is another name for Secor Group, and there is no dispute that ACRE received commissions and played a role in at least some of the real estate transactions.  (Defs.' Banking Br. 7; *see also* Defs.' Banking Br. 8; Defs.' Tax Br. 3.)  Defendants shall produce the requested information for the account associated with ACRE.

92.  Fourth, Brown is not entitled to the banking records of the individual defendants, Secor and Rosso, which are highly likely to contain vast amounts of irrelevant, personal information.  Brown's basis for making such an overbroad, intrusive request appears to be a belief that funds deposited with Secor Group were

ultimately distributed to Secor and Rosso. The banking records of Secor Group and the tax records of the individuals provide adequate, targeted discovery for this purpose. Balancing Brown's minimal need for these records against their likely irrelevance and the burden to Secor and Rosso, the Court denies the motion to compel as to these records and grants the cross-motion for protective order.

IV.
CONCLUSION

93. The Court **GRANTS** Rosso and Secor Group's Rule 12(b)(6) Motion. The claim for breach of contract against these parties is **DISMISSED** with prejudice.

94. The Court **GRANTS in part** Defendants' Rule 12(c) Motion as follows:

   a. All claims against Rosso Group are **DISMISSED** with prejudice.

   b. Brown is not entitled to a declaration that he is a member of Southgroup, and judgment on the pleadings is **GRANTED** in favor of Defendants as to this claim.

   c. The claims for an accounting, distribution, breach of fiduciary duty and constructive fraud, and failure to register a security are **DISMISSED** with prejudice.

   d. In all other respects, the Rule 12(c) Motion is **DENIED**.

95. The Court **GRANTS in part** the Motions to Compel and **GRANTS in part** the Motions for Protective Order as follows:

   a. Defendants, except Rosso Group, shall produce unredacted copies of tax returns for 2013 to 2015 within their possession, custody, or control. To the extent such returns do not exist, each Defendant shall certify to that effect.

To the extent Defendants must obtain any returns from the relevant governmental authority, they shall do so. As needed, Defendants shall produce the returns, certify their non-existence, or initiate an appropriate request to obtain them (and provide Brown a copy of the request) within two weeks of this Order.

b. Secor Group and ACRE shall produce unredacted copies of all responsive banking records from May 2013 to January 2017 within their possession, custody, or control, within two weeks of this Order. Brown is not entitled to the personal banking records of Secor and Rosso or to the records of Rosso Group.

c. Defendants, except Rosso Group, shall supplement their interrogatory responses to identify all entities and individuals with whom they had an investment relationship during the period of the alleged funding promise. Brown is not entitled to receive the names of investors who entered into an investment relationship with Defendants prior to the date of the alleged funding promise.

d. Brown is not entitled to the production of Defendants' agreements with other investors.

e. The Court determines, in its discretion, that the parties shall bear their own costs.

f. Except as stated, the Motions to Compel and Motions for Protective Order are **DENIED.**

This the 28th day of July 2017.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
  for Complex Business Cases